Lavender vs. Hudgens.

---

## LAVENDER VS. HUDGENS.

1. JURORS: *Discretion of Judge, etc.*
   The judge who presides at the trial of a cause possesses a discretion in passing upon the qualification of jurors.
2. *Verdict for one joint defendant, re-trial, etc.*
   Upon the trial of an action for malicious prosecution against A and B, a verdict was returned in favor of A and against B; a new trial was granted B, the plaintiff did not move for a new trial as against A: upon the second trial the court, against the objection of B, treated both defendants as on trial. A was examined as a witness by both parties. Held, that the

Lavender vs. Hudgens.

whole record being before the court, it should have taken notice of A's acquittal, without a plea to that effect; that by treating him as a defendant the court put him in the attitude of an interested witness, and inasmuch as it may have affected the weight of his evidence, it was sufficient ground for a new trial in favor of B.

3. MALICIOUS PROSECUTION: *Measure of damages.*

Where the plaintiff, in an action for malicious prosecution, has been prosecuted by the defendant maliciously and without probable cause, he is entitled to indemnity for the peril occasioned him in regard to his life and liberty, for the injury to his reputation, his feelings and his person, and for all the expenses to which he has necessarily been subjected.

4. ————: *Malice: Probable cause.*

If a party prosecute another on a criminal charge, he will be protected in so doing, however malicious his private motives may have been. provided there was probable cause.

5. ————: *Justification under process.*

Where an arrest is made under a writ regular on its face, and issued by an officer having jurisdiction, it will be a justification to the officer making the arrest, but not to a party who instigated the prosecution with malice and without probable cause.

6. *Presumption of innocence.*

The legal presumption of innocence is to be regarded by the jury in every case, as matter of evidence, to the benefit of which the party is entitled.

7. MALICIOUS PROSECUTION: *Probable cause; burden of proof.*

The want of probable cause is a material averment, in an action for malicious prosecution, and though negative in its form and character, it must be proved by the plaintiff, when put in issue, by some affirmative evidence. (As to what will constitute probable cause in a particular case, see Op.)

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Carroll & Jones,* for appellant.

ENGLISH, CH. J.:

This was an action for malicious prosecution commenced in the Circuit Court of Lincoln County, by William Hudgens against William D. Lavender and Zenas L. Wise.

Lavender vs. Hudgens.

The complaint alleges, in substance, that defendants falsely and maliciously and without any reasonable or probable cause whatever, charged the plaintiff before a justice of the peace with having feloniously passed a five dollar counterfeit bill in imitation of the currency of the United States, and caused the justice to issue a warrant for his arrest, and cause him to be arrested and taken before the justice and committed to answer the charge, and, with like malice and want of probable cause, prosecuted him before the grand jury, by whom an indictment for the charge was ignored.

The defendants filed a joint and several answer: *First*—Denying that they or either of them, falsely, maliciously and without probable cause, caused the plaintiff to be arrested, as alleged in the complaint; and, *Second*—Alleging probable cause, stating the facts and circumstances under which plaintiff was arrested.

The cause was submitted to a jury, and they returned the following verdict:

"We, the jury, find for plaintiff, and assess his damages at twenty-five hundred dollars, to be recovered from W. D. Lavender, and clearly exonerate and *acquit* Z. L. Wise, as he was performing his duty as an officer."

Judgment was therefore rendered for the plaintiff against Lavender for the amount of the damages assessed by the jury, and for costs.

The plaintiff moved for no new trial as to defendant Wise.

The defendant Lavender moved for a new trial, which the court granted, and upon his application for change of venue, ordered the venue changed to the Circuit Court of Jefferson County.

In the Jefferson Circuit Court (November Term, 1876) the court required both the defendants to be put upon trial, and the jury returned the following verdict:

"We, the jury, find for the plaintiff and assess his damages at three thousand dollars, to be recovered from W. D. Lavender."

Lavender moved for a new trial, which the court refused, final judgment was entered against him on the verdict, and he took a bill of exceptions and appealed:

*First*—It appears from the bill of exceptions that during the formation of the jury, and after both parties had exhausted their peremptory challenges, "the court asked a juror, Sunenshine, if he had formed or expressed an opinion in this cause? The juror answered that he had heard Mr. Lavender speak of the case the day before on the cars, but did not know that he had formed an opinion. The attorney for Lavender asked said juror if he could give the parties to this suit a fair and impartial trial as though he had never heard of the case? The juror answered: 'I am a good friend of Mr. Lavender, but I think I can give the the parties a fair and impartial trial according to the testimony, but I say I am a good friend of Mr. Lavender.' And therefore the court excused said juror for cause."

Lavender excepted to this ruling of the court, and made it the seventh ground of the motion for a new trial.

The statute provides that no person who has formed and expressed an opinion concerning the matter in controversy in any civil suit, which may influence the judgment of such person, shall be sworn in the cause as a juror. Gantt's Dig., sec. 3656.

The fact that the juror was a friend of appellant did not disqualify him to serve as a juror. Jurors, like the court, are expected to forget their personal friendship for the parties on the trial of a cause, and upon their solemn oaths, render an impartial verdict according to the evidence. If the court excluded the juror merely because he was a friend to appellant, it was an

error. But in addition to the fact that the juror had heard appellant speak of the case in the cars, on the day before, his frank avowal of his friendship for appellant, and the manner of this avowal, may have made the impression upon the court that he was biased, and would not be an impartial juror. The judge who presides at a trial, and who observes the appearance and manner of jurors, when upon *voir dire*, must necessarily exercise a judicial discretion in passing upon their qualifications. *Benton* v. *State*, 30 Ark., 343.

*Second*—The bill of exceptions further shows that appellant "asked the court to direct the jury and the parties that a judgment having been rendered for Z. L. Wise on a former trial of this cause, and that not having been disturbed, the said Z. L. Wise was not on trial in this cause, which the court refused to do, but on the contrary, instructed the jury that according to the pleadings and proceedings in this cause, the said Z. L. Wise was to be tried with W. D. Lavender," to which ruling of the court Lavender excepted, and made it the ninth ground of the motion for a new trial.

In the instructions given by the court to the jury, on the motion of plaintiff, the court treated both defendants as upon trial, and the third instruction (appellant objecting to each) is as follows: "In this case, if the evidence justifies it, the jury can find one of the defendants not guilty, and guilty as to the other, and assess the damages against the one found guilty."

It was not necessary for the defendant Wise to plead his acquittal on the former trial. The whole record was before the court, which was bound to take notice that he had been acquitted, and that the plaintiff had neither moved for nor obtained the grant of a new trial, and the court should not have required him to be put upon the second trial, but should have informed the jury that he was not on trial. *Atkins* v. *State*, 16 Ark., 574; *Johnson* v. *State*, 29 Ib., 34.

No verdict was rendered against Wise on the second trial, and he is not complaining on this appeal, but may not appellant have been prejudiced by his being put upon trial?

He was examined as a witness by both parties, first by the plaintiff, then for the defense. If he had been legally on trial as a defendant, the plaintiff could not have compelled him to be a witness, against his consent. 1 Greenleaf Ev., sec. 353, etc.

On his examination by the plaintiff he testified, in substance, that on the 21st March, 1872, he was clerking for Lavender, and William Kitch was his bookkeeper and cashier. Witness was also at the time County Attorney for Lincoln County. Plaintiff, on the day named, whom witness had never seen before, came to the store of Lavender. During the day Lavender spoke of the plaintiff, and said plaintiff had approached him to buy counterfeit money. Kitch had just changed a five dollar bill for plaintiff, and, hearing this, he went to the safe, got the five dollar bill out, examined it, pronounced it a counterfeit, showed it to witness and General Garrett, and they pronounced it a counterfeit, and Lavender said to witnesss, you being a County Attorney, ought to look after such cases, and, witness having fully satisfied himself that it was a counterfeit five dollar bill, he made an affidavit, and had plaintiff arrested, and the justice bound him over.

Here the affidavit made by witness was produced, and read to the jury.

Witness further stated that upon his affidavit, a warrant was issued by the justice of the peace (which was produced and read in evidence to the jury) upon which plaintiff was regularly, and according to the forms of law, arrested. The plaintiff was regularly tried by the justice of the peace, and bound over in the sum of $1000. The five dollar bill was sent to several banks at Little Rock, Pine Bluff and Memphis, and pronounced genuine.

When the case came up before the grand jury, for examination, the five dollar note having been shown to be genuine, the grand jury ignored the bill.

On cross examination, for defense, witness stated that there was no bank near Auburn, where Lavender's store was situated. That Kitch was quite an experienced business man, and witness regarded him as a good judge of money. From the statement of Kitch to witness, his own opinion of the bill, and the opinion of General Garrett, he would have had plaintiff arrested without any suggestion from Lavender. Witness did not think that Lavender influenced him in the matter. He, witness, had plaintiff arrested because he was a stranger, and had, as he believed, passed a counterfeit bill, and he believed it to be his duty to arrest him. He was at the time boarding at Lavender's house; had been in Lincoln County more than a year.

After the plaintiff had testified in his own behalf, and Lavender and Garrett had been examined for the defense, Wise was recalled on behalf of the defense, and testified in substance: That he was influenced in making the affidavit by the statement of Kitch particularly, and by his own judgment in the matter. Lavender did not urge the arrest. He did not say anything particularly about it. Witness was about the store all the evening except about half an hour. Did not remember of Lavender saying anything harsh to plaintiff. Witness was present during the whole trial before the magistrate. Lavender did not say anything to the magistrate, except to give in his testimony, that witness heard.

The testimony of Wise conduced to prove probable cause for the institution of the prosecution, which is such a suspicion as would induce a reasonable man to commence a prosecution, and it also tended to contradict some of the statements made by plaintiff on his examination.

49

The Constitution removed the incompetency of parties to a civil suit to be witnesses, but it did not affect the question of their credibility. This is a question for the jury.

The court below placed Wise on trial as a defendant, and thereby put him in the attitude of an interested witness. The jury were instructed to treat him as a defendant, and it must be presumed that they so regarded him. If he had not been placed in this attitude the jury might have attached more weight to his evidence than they seem by their verdict to have done. It cannot be affirmed that appellant was not prejudiced by the ruling of the court in putting Wise upon trial.

*Third*—The appellee (plaintiff below) asked nine instructions to the jury, all of which the court gave except the seventh and eighth.

The first merely stated the character of the action, and is not objectionable, except that it indicated that there was more than one defendant on trial.

The second relates to the measure of damages in the action, and is as follows:

"If the jury should find for the plaintiff, they can fix any amount in damages which they deem proper from the evidence under $10,000 (the amount laid in the complaint). The plaintiff in this action is not required to prove any vindictive damages, but only the actual cost and expenses he was put to in defending the prosecution."

When it is proven that the plaintiff has been prosecuted by the defendant maliciously and without probable cause (and malice may be inferred where want of probable cause is shown) the plaintiff is entitled to indemnity for the peril occasioned him in regard to his life and liberty, for the injury to his reputation, his feelings and his person, and for all the expenses to which he necessarily has been subjected. 2 Greenleaf Ev., sec. 456.

The second instruction is not, in its substance, objectionable, when considered in connection with instructions given for appellant.

The third we have above copied and remarked upon.

The fourth follows: "If the jury should find from the evidence that defendants, or either of them, was actuated by malice in prosecuting the arrest of plaintiff, the fact that he was arrested upon a warrant issued regularly is no justification to the defendants."

If, says Mr. Starkie, a party prosecute another on a criminal charge, it is a rule of law, which seems to be founded upon principles of policy and convenience, that the prosecutor shall be protected in so doing, however malicious his private motives may have been, provided he had probable cause for preferring the charge. 2 Starkie on Evidence, 680.

If it was proven that the prosecution was actuated by malice and without probable cause, the fact that the plaintiff was arrested upon a warrant, issued regularly, was no justification; and, with this qualification, the fourth instruction would have been correct.

In connection with this instruction, may be considered the first moved for the defense, which the court refused, giving all of the others asked. It follows: "If the proceedings under which Hudgens was arrested, and of which he complains in this action, were regular, that is, issued by a competent officer upon a proper affidavit, and the writ upon such affidavit was regular and formal, the plaintiff cannot recover in this action, and the jury will find for the defendant."

The court properly refused this instruction. The writ being regular upon its face, and the justice of the peace having jurisdiction to issue it, was a justification to the officer making the arrest. But if appellant instigated the prosecution, with malice and without probable cause, he could not justify under the writ.

The fifth instruction given for plaintiff is that; "Every man is supposed to be of good fair character until the contrary is proven."

As men do not generally violate the penal code (says Mr. Greenleaf) the law presumes every man innocent, but some men do transgress it, and therefore evidence is received to repel this presumption. The legal presumption of innocence is to be regarded by the jury, in every case, as matter of evidence, to the benefit of which the party is entitled. 1 Greenleaf Ev., sec. 34.

It was admitted on the trial that the plaintiff was of good character among his neighbors, but unfortunately he went down to Auburn, twenty miles from his home, where he was unknown, and the evidence conduces to prove, privately applied to Lavender, a stranger to him, to procure counterfeit money, failing to make his motive, if innocent, understood, which led Lavender and his clerks to suspect him of being dishonest, and under this suspicion the five dollar bill, which he had procured one of the clerks to change, was examined and pronounced counterfeit, and hence his arrest as stated by Wise, who was at the time County Attorney. It turned out that the bill was genuine, and the arrest was unfortunate for both parties. Had the plaintiff been as well known at Auburn as he was among his neighbors, it is probable the arrest would not have occurred.

The sixth instruction is: "If the jury believe from the evidence that under all the facts and circumstances as proven by the evidence, the defendants had no reasonable or probable cause to believe that the plaintiff had committed a felony, and still they procured his arrest, they are guilty."

The want of probable cause is a material averment, and though negative in its form and character, it must be proved by the plaintiff, when put in issue, by some affirmative evidence. Probable cause for a criminal prosecution is understood to be such

Lavender vs. Hudgens.

conduct on the part of the accused · as may induce the court to infer that the prosecution was undertaken from public motives. * *. * The question of probable cause is composed of law and fact, it being the province of the jury to determine whether the circumstances alleged are true or not, and of the court to determine whether they amount to probable cause. Regularly, the facts material to this question are first to be found by the jury, and the judge is then to decide, as a point of law, whether the facts, as found, establish probable cause or not. But if the matter of fact and matter of law, of which the probable cause consists, are intimately blended together, the judge will be warranted in leaving the question to the jury. Greenleaf Ev., sec. 454; 2 Starkie Ev., p. 567, etc., and notes.

The sixth instruction given for plaintiff, taken in connection with several of those given for the defense, in which the court, in effect, indicated the meaning of probable cause, is not objectionable.

The ninth follows: "If the jury find from the evidence that the plaintiff was arrested at the instance of the defendants upon the charge of passing a counterfeit five dollar bill, that prior to such arrest being made, no examination of said bill had been made by a judge of money, and that the plaintiff was imprisoned without any examination by such judge of money, these are circumstances the jury may consider in making up their verdict."

What the jury understood from the language "judge of money," as employed in this instruction, we do not know.

The testimony conduced to prove that a large amount of money was handled in Lavender's store in the purchase of cotton, etc., and that Kitch, the cashier, Wise and General Garrett, who was at the store at the time, examined the bill, and believed it to be counterfeit. Kitch, whose deposition was read on the trial, states that he examined the bill, after being informed that

the plaintiff had approached Lavender to obtain counterfeit or bogus money, and he was of the opinion that it was a counterfeit. That the judgment of the witness may have been influenced by the suspicion which the plaintiff labored under at the time is probable. It was not necessary, however, to send the bill to a distant bank to be examined, before plaintiff could be arrested at a country store.

If Wise and appellant believed under the circumstances that the bill was counterfeit, and that plaintiff had knowingly passed it, and they acted upon that belief, in the discharge of what they deemed a duty to the public, there was probable cause for the arrest, though the bill was afterwards ascertained to be genuine, and so, in effect, the court said to the jury in some of the instructions for the defense.

*Fourth*—The only remaining ground assigned in the motion for the new trial, which we deem it material to notice, is that the damages assessed by the jury were excessive.

The plaintiff was the only witness who placed any estimate on the damages which he had sustained by the prosecution.

The plaintiff, according to his testimony, was about fifty years of age, a poor man and unlettered. A Dutch peddler had told him that there were New York houses which sent out counterfeit money, and that Lavender was a good judge of money. He went down to Lavender's store to purchase some seed potatoes, and Lavender being pointed out to him, he took him aside and said something to him about counterfeit money, at which Lavender flew into a passion and abused him, etc.

He was under arrest about forty-eight hours, and had to travel about thirty miles to get bail. He went to the court house three or four times between then and court to look around and see how his case was coming on. When court met, he went over and staid at court a week or so, and the case was thrown out by the grand

jury, and he went home. He thought he lost about a month about the case; thought his "expenses, horse hire and time and damages would amount to full $2500 for injury to feelings," etc.

Lavender's account of their first interview is as follows:

"The first time I ever saw or heard of plaintiff was about the 20th of March, 1872, when he came to my store at Auburn. He called for me, and said he wanted to see me privately. I went with him into the front room, no other person being in there. He then asked me if I was not an agent for a New York house? I told him I was, for Cochrane, McLean & Co. He said he did not mean that; that he understood I was an agent for some New York house to put out a lot of money. I said, oh yes! I have disbursed a good deal of money for cotton for my house, some $60,000. He said, I understood you was an agent for some New York house to sell counterfeit money, and I wanted to get some. I asked him sharply, who told you that? It vexed me to be so approached. He said a Dutch peddler had told him that I was the agent for that kind of a New York house. I said if you do not bring him to me in three days, I shall hold you personally responsible for thus approaching me. I told Mr. Wise, the County Attorney, and my clerks what plaintiff said to me, and told them they had better notice him; that from his approaching me about bogus money, he was probably a bad character," etc.

The jury were liberal to the plaintiff in fixing his damages. They allowed him $500 more than he estimated his damages at in his testimony.

They no doubt looked at the fact that he was a man of good character among his neighbors, and had been prosecuted for passing counterfeit money, when he was in fact innocent. They perhaps did not attach sufficient consequence to the facts shown on the other side, that he was a stranger at Auburn, where his good

character was not known. That he had placed himself under suspicion by an unfortunate approach to Lavender on the subject of counterfeit money. That if his motive in the approach was not criminal, he had not so impressed Lavender, and that the witnesses present believed the bill which he had passed to the house to be counterfeit, and hence he was arrested.

We have above stated the general rule of law as to damages in suits for malicious prosecution; and this court would not be inclined to disturb a verdict on the ground of excessive damages, unless the record disclosed some evidence that it was the result of passion, prejudice, or corruption on the part of the jury. *Sexton* v. *Brock*, 15 Ark., 356.

But upon the whole record, we are of the opinion that the judgment should be reversed and the cause remanded for a new trial.