RUMPING *v*. ARKANSAS NATIONAL BANK OF HOT SPRINGS.

## Opinion delivered November 29, 1915.

1.  BILLS AND NOTES—FRAUD—KNOWLEDGE—VALIDITY—CONSIDERATION FOR A BET.—Plaintiff, the owner of a draft, was induced to part with the same to persons participating in a fraudulent betting scheme; plaintiff endorsed the draft, and the endorsees thereof placed the same with defendant bank for collection; the bank collected the draft and paid out the proceeds to the endorsees' order. *Held* the draft was good in the hands of one who took it without knowledge of the fraud in the assignment thereof, and that Kirby's Digest, § § 3690-3691, providing that a note given as a bet or wager is void, does not apply.

2.  FRAUD—NOTE GIVEN AS A BET—VALIDITY.—Kirby's Digest, § § 3690-3691, providing that where any part of the consideration for a note or other security is money won at any gambling or betting device, that the note shall be void, reaches only to notes or securities executed by the loser at a gaming device, or by one who has borrowed money or property to be bet at a gaming device. The statute does not include drafts which are issued upon a valid consideration and endorsed to another, even if the assignment is a part of a gaming transaction.

3.  GAMING—MONEY WON—COLLECTION.—Kirby's Digest, § 3687, giving a right of action against the person winning money or property at any game or gambling device or bet or wager, does not give a right of action against anyone except the winner; it does not confer a right of action against one who receives commercial paper which has been received by a third person without actual knowledge of its infirmities.

4.  FRAUD—COLLECTING DRAFTS—KNOWLEDGE OF FRAUD.—Where one S. procured certain drafts from plaintiff in pursuance of a gambling scheme, and deposited them with defendant bank for collection, checking out the proceeds, the defendant bank will not be liable to the plaintiff for the amount of the same, in the absence of a showing that the defendant had any knowledge of the fraudulent transaction.

5.  JURORS—INTEREST—COMPETENCY.—The fact that a juror is indebted to one of the litigating parties, will not necessarily disqualify him.

6.  JURORS—QUALIFICATIONS—DISCRETION OF TRIAL COURT.—The decision of the trial judge upon the question of a juror's qualification must necessarily rest largely in the exercise of sound discretion, and

the court's decision will not be set aside unless it clearly appears that there has been an abuse of discretion and that a biased juror has been forced upon the parties.

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

*Martin, Wootton & Martin,* for appellant.

1. The peremptory challenge of the juror Webb should have been allowed. A juror is not to be excluded merely because he is indebted to one of the parties, but where he is at that party's mercy, or has been treated with peculiar indulgence, he is disqualified. 17 Am. & Eng. Enc. of Law (2 ed.), 1127; 29 S. W. 926; 35 W. Va. 337, 13 S. E. 1015; 37 Neb. 435; 55 N. W. 943.

2. Appellant was entitled to a directed verdict, because the endorsement of the drafts was void under the statute. Kirby's Dig., §§ 3690, 3691; 41 Ark. 331, 340, 346. That the pool room and horse race were mythical and used merely as a subterfuge by which to obtain manual possession of appellant's drafts, does not militate against the right of appellant to recover as for money wagered. 77 Ark. 279; 93 S. W. 934, 5 L. R. A. (N. S.) 906; 130 Fed. 905; 147 Fed. 321; 142 Ill. App. 265.

3. Appellant was entitled to a directed verdict because by the undisputed evidence appellee was charged with knowledge that the drafts were stolen. 77 Vt. 189; 59 Atl. 827; 1 Addison on Torts, Dudley & Bayley Ed., 423; 48 Ark. 454; 110 Ark. 587; 95 U. S. 655; 60 Mo. 318; 8 Ala. 138; 71 Ga. 400; 51 Am. Rep. 266; 75 Ga. 366; 57 Ill. 295; 11 Am. Rep. 15; 64 Ia. 97; 46 Ohio 381; 8 Pa. 285; 108 Ill. App. 443; 123 Ala. 452, 82 Am. St. Rep. 135; 70 Pac. 439; 108 Ind. 365; 131 Ia. 97; 101 Ky. 354; 9 Ky. Law Rep. 196; 83 Mo. App. 194; 46 S. E. 163, 54 W. Va. 303; 8 Wy. 54; 59 N. Y. S. 407; 66 L. R. A. 632; 69 N. E. 182; 16 Kan. 396; 93 Mo. 503; 104 Mo. 459.

*Rector & Sawyer,* for appellee.

1. There is nothing in the record showing that the acceptance of the juror Webb was prejudicial to the rights of the appellant. There is no showing that he

was at the mercy of appellees or that he had been treated with such peculiar indulgence as to cause him to favor appellee. There is nothing to show any abuse of judicial discretion by the court in finding him qualified. 30 Ark. 342; 32 Ark. 766-7; 74 Ark. 388.

2. The drafts were not void. They were bank drafts bought and paid for by the appellant. The consideration given for them was not "money or property won at any game or gambling device or any bet or wager whatever," nor were they given "for money or property lent to be bet at any gaming or gambling device, or at any sport or pastime whatever." Chapter 73 of Kirby's Digest, has no application. This is not a suit for money or property lost at a game or gambling device on a bet or wager, but for money *stolen,* as is patent from the testimony. Yet, even if it could be held that the drafts were lost on a bet or wager, appellant could not recover; because the action is not brought against the person winning the drafts, nor brought within ninety days from the time the drafts were lost. Kirby's Digest, § 3687; 18 Ark. 570. Sections 3690 and 3691 of the Digest are purely defensive. The latter section only applies to *assignments* of instruments given for *gambling debts,* and if the consideration of the drafts involved here was not a gambling transaction, section 3691 would not control it.

In support of the proposition that the drafts were either stolen from appellant or were obtained from him by false pretenses, see 78 Ky. 15; 39 Am. Rep. 194; 2 Bishop, Crim. Law, § 808; 67 N. Y. 329; 48 Am. Rep. 754; 57 Mich. 403; 58 Am. Rep. 372; 153 Ill. 660; 49 Am. St. Rep. 180; 72 Ark. 522; 75 Ark. 432.

After the drafts were proven to have been stolen, the only duty resting upon appellee was to show that it held them innocently, and the jury were properly instructed that "in order to recover, the burden is on the plaintiff to prove that his drafts were stolen and that the defendant *received them with knowledge thereof.*" 125 Am. St. Rep. 795, and notes pp. 813, 817, 818; 20 How. (U. S.) 343; 2 Wall. 110; 4 Ga. 287; 130 Wis. 326;

110 N. W. 192; 125 Ga. 41; 53 S. E. 808; 142 N. C. 61, 53 S. E. 847; 118 Ill. App. 441; 21 Wall. 354; 4 Ad. & E. 874; 6 Nev. & M. 372; 71 Conn. 245.

3. There is no merit in appellant's third contention. The authorities cited by appellant under this head are not applicable because the very fact upon which they are based, namely, the question of notice, was properly submitted to the jury by the first and second instructions given at appellant's request, and by the third instruction given at the instance of appellee, and the question was settled by the verdict of the jury. 57 Ark. 577; 135 Am. St. Rep. 281; 2 Ark. 360; 5 Ark. 407; 39 Ark. 491; 23 Ark. 208; *Id.* 50; 13 Ark. 306; 15 Ark. 505; 46 Ark. 141; 48 Ark. 495.

McCulloch, C. J. The plaintiff, John H. Rumping, was swindled by certain parties in the City of Hot Springs who induced him to wager his property in what was represented to be a pool room where bets were made on horse races. He staked certain drafts aggregating the sum of $3,778 on a race, and those drafts were placed in the hands of defendant Arkansas National Bank of Hot Springs for collection. The bank collected the drafts and paid the proceeds out to one Ed Spear, the person who delivered the same to the bank for collection. The drafts were properly endorsed in blank by the plaintiff. This is an action instituted by the plaintiff against the bank and Spear to recover the amount of the drafts. There was a trial of the case before a jury, which resulted in a verdict in favor of the plaintiff against Spear, but in favor of the bank. The plaintiff alone has appealed.

The transactions which formed the basis of this controversy occurred in January, 1913. Plaintiff resided in the State of Montana and came to Hot Springs for the benefit of his health. Shortly after he came to Hot Springs he met a man who introduced himself under the name of Minor, and the latter introduced plaintiff to another man who said that his name was Hamilton and represented himself to be the agent of a concern which he called the "Horse Breeders Association of America." Minor disap-

peared soon after this transaction, but it turned out afterwards that Hamilton's real name was Jack Porter and that he resided in Hot Springs. The narrative of the plaintiff was a long one, but the substance of his testimony was to the effect that he was taken to the pool room and induced to enter jointly with Hamilton and Minor in a bet on a certain named horse which Hamilton told the plaintiff was sure to win. The pool room was a fake and it was represented to plaintiff that he and his two companions, Hamilton and Minor, had won on their joint bet the sum of $108,000. Plaintiff, as his part of the stakes, put up certain drafts aggregating $3,778 drawn by the German Trust & Savings Bank on the Continental & Commercial National Bank of Chicago, payable to the plaintiff's order. He endorsed the drafts in blank and they were turned over to the keeper of the pool room with the other stakes. After the bet was won, the pretended keeper of the pool room claimed that it was against the rules to accept drafts and that the winnings would not be paid until the drafts were forwarded and collected so as to show that the bet had been made in good faith. This undoubtedly was a scheme in order to keep plaintiff quiet until the drafts could be collected and the proceeds made away with by the conspirators. In this the conspirators were successful, for they secured the collection of the drafts and got the proceeds before plaintiff suspected that anything was wrong. The drafts reached the hands of Spear who placed them in defendant bank for collection. The bank forwarded the same in regular course of business for collection, and after the returns were received the same were checked out by Spear.

This action was instituted several months afterwards and the evidence adduced by the bank tends to show that it had no knowledge that there was anything wrong with the transaction. The court submitted the case to the jury upon the following instructions, the first two of which were given at the instance of the plaintiff, and the last at the instance of the defendant bank.

"No. 1.   In order to recover, the burden is upon the plaintiff to prove that his drafts were stolen, and that the defendants received them with knowledge thereof.   It is not necessary, however, that the plaintiff should prove that the defendants had actual knowledge that they were stolen.   If they received the drafts under such circumstances as would cause a reasonable man to make inquiry as to how the drafts had been secured, then they are charged as a matter of law, with such information as a careful inquiry would disclose or reveal."

"No. 2.   If you find from the evidence in this case that the plaintiff's drafts were stolen from him, or that he was swindled out of them by a fake race or pool room scheme, then you are instructed that it is your duty to carefully consider the circumstances under which the defendants received them.   You are to determine from the evidence in the first place, whether they actually knew them to have been stolen, or whether the circumstances were such as to lead a prudent man to inquire as to the means by which they had been obtained.   And if you find that the defendants, or either of them wilfully failed to make such inquiry, after knowledge of facts or circumstances which would place an ordinarily prudent man in their position on inquiry then they are responsible for such failure, and are presumed in law to know what such inquiry would have disclosed."

"No. 3.   If you believe from the evidence in this case that the drafts complained of in this case were received by the Arkansas National Bank from Ed Spear for collection and that they were collected and placed to the credit of Ed Spear in said bank and were paid out to Ed Spear before this suit was brought and before the Arkansas National Bank had notice of any right, title, interest or claim the plaintiff in this case had on said drafts or money; and that the Arkansas National Bank had no knowledge that said drafts had been stolen from the plaintiff at the time they were received by the bank and that at the time they were received by the bank for collection from Ed Spear that Ed Spear was a regular customer of

said bank and had for many years been such customer and that said drafts were received in a regular way and in the usual course of business by said bank and that the said bank did not know at the time it received said drafts or at any time before it paid the money collected on said drafts to the said Ed Spear, that said drafts had been stolen and had no reason to believe that they had been stolen; and had no knowledge of facts to place them on inquiry that they were of this character; then in that event you should find for the defendant, the Arkansas National Bank."

(1)  It is unnecessary to discuss the instructions on the branch of the case involving Spear, for, as before stated, the judgment was against him and there has been no appeal. The contention of plaintiff is that the court should have given a peremptory instruction in his favor. It is argued that the transaction falls within the terms of the statute which declares to be void bills, notes and other securities, the consideration of which is for money or property won at gaming, or where it is money or property lent to be bet at gaming. The statute on that subject reads as follows:

"All judgments, conveyances, bonds, bills, notes, securities and contracts, where the consideration or any part thereof is money or property won at any game or gambling device, or any bet or wager whatever, or for money or property lent to be bet at any gaming or gambling device, or at any sport or pastime whatever, shall be void.

"The assignment of any bond, bill, note, judgment, conveyance, contract or other security shall not affect the defense of the person executing the same." Kirby's Digest, sections 3690-3691.

It is clear, we think, that the transaction does not fall within the terms of the statute. The drafts were valid ones, issued by one bank on another in plaintiff's favor, and by him properly endorsed. The considerations for these drafts were not, in whole or in part, "money or property won at any game or gambling device," nor

"money or property lent to be bet at any gaming or gambling device."

The circumstances under which the assignments of the drafts were obtained from plaintiff amounted to larceny or to obtaining property under false pretenses, but such assignments did not fall within the terms of the statute quoted above. *Hindman* v. *State,* 72 Ark. 516; *Johnson* v. *State,* 75 Ark. 427.

(2-3) The drafts constituted commercial paper which was good in the hands of any person except those who took them with knowledge of the fraud in the assignment thereof. The statute just quoted only reaches, by the express terms thereof, to notes or securities executed by the loser at a gaming device, or by one who has borrowed money or property to be bet at a gaming device. The statute does not include drafts which are issued upon a valid consideration and endorsed to another, even if the assignment is a part of a gaming transaction. It is true there is another statute (Kirby's Digest, section 3687) which gives a right of action against the person winning money or property at any game or gambling device or bet or wager, but the right of action is not given against anyone except the winner. It does not confer a right of action against one who receives commercial paper which has been received by a third person without actual knowledge of its infirmities.

(4) Therefore, if the plaintiff is entitled to recover at all from the bank it must be upon the ground that the bank participated in the scheme to rob the plaintiff or that it received information concerning the facts of the transaction at the time the drafts were placed there by Spear for collection or while it held the money to Spear's credit. The bank, in receiving the drafts for collection, acted merely as the agent of Spear, and the proof shows that the money was paid out to Spear after the proceeds of the drafts had been received by the bank. The court properly submitted the issues in the instructions hereinbefore quoted, and there was sufficient testimony to justify the jury in finding that the bank received the drafts

for collection, and paid the proceeds out to Spear when collected, in the regular course of business without any knowledge of the fact that the drafts had been fraudulently obtained from the plaintiff or anyone else.

It is insisted that the testimony shows conclusively that the bank had been receiving drafts from Spear under circumstances which must have indicated that he was operating as a "fence" for swindlers of the type which Minor and Porter were shown to be. But officers and employees of the bank were introduced, who testified concerning those transactions, and whose testimony, if believed, was sufficient to show that the bank was doing a legitimate business with Spear as one of its customers and had no knowledge that the latter was engaged in swindling visitors to Hot Springs or was accepting drafts from parties who were carrying on those nefarious enterprises.

Finally it is contended that the court erred in refusing to sustain plaintiff's challenge of one of the jurors. Juror Calvin Webb stated on his examination that he had been engaged in the mercantile business in the City of Hot Springs and had become indebted to the bank in various transactions, but that he had filed a petition in bankruptcy and that his estate was pending in the bankrupt court. He also stated that Spear had been endorser on some of his paper held by the bank. He stated in response to interrogatories of the court that those facts would not influence him in arriving at a verdict in this case, but that he could and would try the case according to the law as laid down by the court and the evidence as adduced from the witnesses. There was more reason for holding the juror to be disqualified so far as Spear was concerned than so far as concerns the bank, but the verdict of the jury was against Spear and the question of the juror's disqualification as to him has thus been eliminated. So far as concerns the bank, there is nothing tending to disqualify Webb as a juror except that he had been doing business with the bank and borrowed money in the regular course of business. That did not necessarily consti-

tute bias which rendered the juror disqualified. He stated that his feeling toward the bank was not such that it would influence his verdict either one way or the other, and we think that the court did not err in holding that he was not disqualified.

(5) The mere fact that the juror was indebted to one of the parties did not necessarily disqualify him. Jurors who are accepted by the court as men of sufficient intelligence to decide upon questions of fact, are expected to forget their friendships for one of the parties even though that friendly feeling should be based on past favors. *Lavender* v. *Hudgens,* 32 Ark. 763.

(6) The decision of the trial judge upon the question of a juror's qualification must necessarily rest largely in the exercise of sound discretion, and the decision should not be set aside unless it clearly appears that there has been an abuse of discretion and that a biased juror has been forced upon the parties. *Benton* v. *State,* 30 Ark. 328; *Lavender* v. *Hudgens, supra.*

We are of the opinion that this case was fairly presented to the jury and that there was no error committed. The judgment is therefore affirmed.