THE STATE v. MINOR H. LEWIS, Appellant.—20 S. W. (2d) 529.

Division Two, October 8, 1929.

*Otho F. Matthews, Ed. S. Jones, William L. Hamrick* and *Harry J. Libby* for appellant.

*Stratton Shartel,* Attorney-General, and *David P. Janes,* Special Assistant Attorney-General, for respondent.

WALKER, J.—The appellant was charged by indictment in the Circuit Court of Shelby County with having, on the 8th day of October, 1925, as president of the Clarence Savings Bank, received a check for $530, for deposit in said bank, with knowledge of the fact that the same was, at the time, insolvent and in a failing condition. A change of venue was granted, and the case was transferred to the Macon County Circuit Court for trial. Upon a trial to a jury, the defendant was convicted and sentenced to two years' imprisonment in the penitentiary. From this judgment he appeals.

On the 12th and 13th days of October, 1925, an examination of the affairs of the bank was made by two examiners of the State Finance Department, which disclosed that while the books of the bank showed bills payable to the Quincy-Ricker National Bank of $5,000, the indebtedness by the Clarence Bank to the Quincy Bank was $20,000; that a discrepancy of $16,152.96 existed in the account of the bank with the Mercantile Trust Company of Quincy; and a

discrepancy of $2,610 in the bank's account with the Hannibal Trust Company. The examiners of the State Finance Department notified the directors of the bank of its condition and informed them that, unless the impairment of the bank's capital, as shown by their examination, be immediately corrected, the insolvency of the bank would be declared and an order made requiring it to cease operating. With a supplemental order that the business of the bank and a record of its proceedings be kept separate from its past transactions, it was permitted to continue in business until October 16, 1925, when, the order of the bank examiners not having been complied with, a resolution was prepared, signed by all of the directors, placing the bank in the hands of the State Commissioner of Finance, and it was ordered closed by the board of directors, October 17, 1925, and its affairs were taken over by the State Finance Department for liquidations.

So much of the resolution of the board of directors, omitting the formal opening and close of the same, as may be relevant to the matter at issue, is as follows:

"Our attention was called by the examiners to the difference of $16,152.96, existing between our records and those of the Mercantile Trust Company of Quincy, Illinois. Our records showing the amount due from them to be $16,152.96 more than their records show to be due us. Our attention was also called to the fact that this difference had existed during the months of August and September previous to the present time. Likewise attention was called to the difference between our records and those of the Hannibal Trust Company of Hannibal, Missouri, in the sum of $2,610.83. Our account showing said Trust Company to owe us this $2,610.83 more than the books of said Trust Company show to be due us. Also we find the bank has been obligated at the Quincy-Ricker National Bank, Quincy, Illinois, in the form of bills payable in the sum of $20,000 of which $15,000 is not shown on our records as a liability of this bank. We also find slow and doubtful notes aggregating some $40,000.

"In view of the above facts and after thorough discussion in which each member of the board participated, motion was made by H. S. Maupin, duly seconded by W. J. Daniel, that this bank be closed and placed in the hands of the Department of Finance of the State of Missouri and that examiners South and Shelby be notified of our action and instructed to take charge of the bank. The president and cashier are hereby instructed to place a notice on the front door of this bank, as follows: 'This bank is in the hands of the Commissioner of Finance of the State of Missouri, by order of the Board of Directors.'

"Motion carried by unanimous vote of the Board of Directors."

The liquidation of the bank by the state examiners was commenced soon thereafter, and was in progress at the time of the trial of the defendant in May, 1927. It was shown at that trial that not only had the defendant in his last statement, October 12, 1925, falsified the condition of its accounts with the three banks heretofore mentioned, but that at least $100,000 of the notes payable to the bank were worthless. This was testified to by several witnesses. Among others a Mr. Killam, who had been placed in charge of the bank by the State Finance Department, testified that during the fifteen months that had elapsed since he took charge of the bank he had made a careful investigation of the financial standing of the makers of these notes and had made persistent efforts to collect them, and that at least $100,000 of the same were uncollectible and worthless. He also testified that the total amount of the bank's personal loans at the time it was closed, eight days after the deposit was made, was $359,-474.03, instead of $354,375, and that its real estate was of the value of $12,901.50, instead of $21,500, as set forth in the bank's last statement made five days before its board of directors resolved to discontinue its business on account of its failing condition. Following this resolution of the board of directors the bank was ordered closed by the State Finance Department. There was additional testimony by Howard Combs president of the Shelby County Bank of Clarence, that he had been in the banking business in Clarence for seventeen years; that he was familiar with the financial condition of the people of that vicinity, and in his opinion, after having examined the paper of the Clarence Savings Bank, that $123,209.97 of its bills receivable were uncollectible. According to the foregoing a summary of the State's evidence adduced to show the bank's insolvency, shortages were disclosed in the amount of $33,763.79 in its bills payable, worthless paper in the sum of $123,209.97, and that is carried an item in its real estate account of $10,000, in excess of its ownership or equity therein. Thus of its total resources in the amount of $429,195.78, as set forth in its last statement made by the defendant, there were fictitious and worthless items in the amount of $166,793.76.

In the defendant's testimony, from which it appears he was the only one familiar with the bank's condition, he attempts to explain the discrepancies between its real condition and that set forth in the statement which he was required by law to make and did make. His testimony was not given credence by the jury; and measured according to its merit, if its verity be not questioned, it falls short of a defense to the charge made against him. This much clearly appears: that the defendant, during his years of connection with the bank, had been given free hand as to its superintendence and control. He not only managed the routine matters of its daily business, but

loaned its money and passed upon the financial worth of those who borrowed it. If there were no other evidence in support of that fact, the resolution of the board of directors, expressive of their surprise at the bank's real condition, is ample to confirm it. We are left, therefore, to a consideration of such procedural errors as the record may disclose in the review of this case.

The defendant's assignments of error consist in the improper admission of testimony; incompetency of certain jurors; the sufficiency of the evidence and the giving and refusing of instructions.

I. **Admission of Testimony.** The defendant alleges error in permitting the witness Shelby, the State Bank Examiner, to testify as to what he said at the directors' meeting relative to the character of the notes he had examined. A review of the record discloses that this witness merely outlined his methods in conducting the examination of the bank. The only reference to the bad paper of the bank came out in his detailing a conversation with the board of directors in the defendant's presence. It was not an expression of an opinion of value. It was a reviewing, before the directors, of the result of the examiners investigation. The information upon which these results were based came from the directors and from the defendant by reason of inquiries made by the witness in the process of the examination. An attempt to get Shelby to give his opinion as to the value of the paper of this bank failed by reason of an exception being sustained to the question.

The objection to the testimony of Killam and Combs is that they were not qualified to give expert testimony on the value of the notes of the Clarence Savings Bank.

Killam qualified by showing that he had spent fifteen months from the time he took charge of the bank a few days after it was closed, until the trial of the defendant, in an intensive and persistent effort to ascertain the financial standing of the makers of notes held by the bank and their sureties with a view to the collection of the same, and that his labors in that behalf brought him in close contact with these persons in the ascertainment of their solvency. This testimony, referring as it did to a few days after the closing of the bank to the date of the trial, was sufficient to render him qualified to testify as to the value of the paper of the borrowers held by the bank as a part of its resources.

Howard Combs, the president of the Shelby County State Bank of Clarence, qualified by showing that he had been engaged in the banking business in Clarence for seventeen years, which had made the knowledge of the financial standing of the people of Clarence and the surrounding country important to him and to his bank. Such

knowledge, he stated, was essential to the successful conducting of a bank in Clarence, or for that matter the conducting of a bank in any community. His testimony, therefore, that there was worthless paper in excess of $123,000 among the assets of this bank was based upon well grounded qualifications to speak upon the subject, and the admission of his testimony was not error.

It was shown in the examination of these witnesses that they had knowledge of the financial condition of the makers of the notes and their sureties as it was not shown in the Walser case (Mo.), 1 S. W. (2d) l. c. 150, cited by defendant. In the Sattley case, 131 Mo. l. c. 486, also cited by the defendant, the witness, a banker whose testimony was objected to, qualified in much the same manner as Combs, and his testimony was held admissible and the judgment of the trial court affirmed.

In State v. Sanford, 297 S. W. (Mo.) 73, the witnesses, to prove the bank's insolvency, were not qualified as in the instant case. In that case there was no showing of their personal knowledge of the bank's condition, but that it was based upon information derived from other persons, and while insufficient in probative force was also inadmissible as hearsay. These objections do not obtain under the facts in the instant case. The witnesses whose testimony we have abstracted were not only shown to have been qualified as experts as to the value of the bank's paper at the time the deposit was received, but were further competent in having a complete knowledge of the financial standing of the makers of the notes and their sureties.

There is nothing in the Salmon case, 216 Mo. l. c. 524, to sustain the contention, made by the defendant, as to the inadmissibility of the testimony of the witnesses whose statements are here under review.

The cases cited by the defendant which we have reviewed are our own rulings. Their inapplicability to sustain the defendant's contention we have demonstrated, as well as the competency, under the facts of the witnesses whose testimony is assigned as error.

II **Competency of Jurors.** The competency of A. R. Falkiner and A. N. Squires, as members of the trial panel of jurors, is challenged. First, on account of the alleged relationship of said jurors to depositors in the Clarence Savings Bank; and second, that Falkiner had formed and expressed an opinion as to the probable verdict that would be rendered upon the trial of the defendant. These grounds are alleged not to have been known to the defendant or his counsel until after the verdict. The statute defining the relationship that will disqualify one from serving as a juror in a criminal case, is as follows: "Where any indictment or information alleges an offense against the person or property of another, neither the injuried party nor any person of kin to him shall be a competent juror on the trial,

1082

nor shall any person of kin to the prosecutor or defendant in any case serve as a juror on the trial thereof.'' [Sec. 4011, R. S. 1919.]

An additional statute, general in its nature and applicable alike to civil and criminal cases (Sec. 4023, R. S. 1919; State v. Meininger, 312 Mo. 525, 290 S. W. 1007), defines other grounds of disqualification and so far as relevant to the case at bar is as follows: . . . ''No person who has formed or expressed an opinion concerning the matter, or any material fact in controversy in any such cause which may influence the judgment of such person, or who is of kin to either party to any such cause within the fourth degree of consanguinity or affinity, shall be sworn as a juror in the same cause.'' [Sec. 6632, R. S. 1919.]

The question here demanding solution is not, under the terms of these statutes, one concerning the relationship of the jurors to any of the parties to the action, but their relationship within the degree prescribed by these sections, to persons who sustained, at the time the bank was closed, a business connection with the latter as depositors. In the determination of this question it is not necessary that the challenge on which the alleged incompetency is based be within the terms of the statutes. Vested, as the trial court is, with a wise discretion in the premises (Joyce v. Met. St. Ry. Co., 219 Mo. 344), it is not necessary that its rulings in regard thereto be limited to the strict terms of the governing statutes. A ground of challenge to the competency of a juror will, therefore, be sustained where it appears that the circumstances are such as to raise an inference that the alleged relationship may influence his judgment in the rendering of his verdict. [Johnson v. State, 1 Okla. Cr. 321; Sehorn v. Williams, 5 N. C. 575.] A juror, therefore, may be excluded if he lacks any of the ordinary qualifications which the court, in its discretion, may deem sufficient to render him an impartial juror. [Glasgow v. Railroad, 191 Mo. 347, 356; State v. Allison, 300 S. W. (Mo.) l. c. 1070.] Thus much, therefore, in regard to the defendant's right of challenge under the facts. This right established, we come to a consideration of the fact whether cousins or other relatives of the wives of jurors, within the limitations of kinship, under section 6632, supra, will render such jurors incompetent to serve as such in the trial of the president of a bank, as at bar, in which such relatives were at the time the bank was closed, depositors in the same. The courts of last resort, here and elsewhere are replete with rulings upon the disqualification of jurors on account of their relationship by consanguinity or affinity to persons who directly or indirectly were shown to have an interest in the cause in which the jurors had been summoned. A review of the cases, however, discloses but a limited number of instances in which the disqualification of jurors has been

discussed where the facts are similar to those in the instant case. In Fordham v. State, 148 Ga. 758, in which the principal question was whether a lawyer who had brought suit against the makers of certain notes, which had been transferred to a bank alleged to be insolvent, could, after the severance of his relation with those suits and his election to the bench, preside as judge at the trial of an officer of the bank who had been indicted under the penal code of Georgia as having been in charge of the bank's affairs when it became insolvent. In that case, evidently in passing, as it is not a ruling upon the issues submitted, it is said, in effect, that in the trial of a case of this character, "a juror who is related within the prohibited degrees to a stock holder or depositor of the insolvent bank is disqualified."

The cases cited in support of the ruling in that case do not support the holding therein that relationship to a depositor of a juror will disqualify the latter from serving in the criminal trial of an officer of a bank charged with receiving a deposit when the bank was insolvent. On the contrary, it is expressly held by the Georgia Court of Appeals, that such relationship is not a ground of challenge. [Spence v. State, 20 Ga. App. 61; Stapleton v. State, 19 Ga. App. l. c. 39; Griffin v. State, 18 Ga. App. 403.] These cases are in accord with rulings elsewhere on this subject. Further than this, courts in several jurisdictions have held that the mere fact that a person who is a depositor in a bank does not *ipso facto* disqualify him as a juror in cases where the bank is interested or is the injured party in a criminal prosecution. [Elliott v. State, 77 Fla. 611, 825 So. 199; Twitchell v. Thompson, 78 Ore. 285, 153 Pac. 45; Harrison v. Pac. Ry. Co., 72 Ore. 533, 144 Pac. 91; Mathews v. State, 198 Pac. (Okla. Cr.) 112.]

These rulings, while more particularly applicable to creditors, which is the nature of the relation sustained by general depositors to banks, are nevertheless held to apply to debtors. Confirmation of this conclusion is found in cases which hold that those who have borrowed money from a bank are not thereby disqualified from serving on juries in actions against it. [Rumping v. Arkansas Natl. Bank, 121 Ark. 202, 180 S. W. 749; Manning First Natl. Bank v. Pierson (S. C.), 117 S. E. 542; Twitchell v. Thompson, supra; Harrison v. Pac. Ry. Co., supra.]

There is one case in this State, Price v. Patrons, etc. Co., 77 Mo. App. 236, which is a suit against an insurance company to recover loss in which jurors were held disqualified who were related within the fourth degree by consanguinity or affinity to persons insured in the corporation, the laws of which made those insured members of the corporation and subjected them to the payment of assessments to cover the losses. The distinctive difference between the facts in

that case and the one at bar becomes apparent upon a statement of the same. In the former the disqualifying relationship of the jurors was with persons who were an essential part of the corporation itself. By them the corporation was created and through their continued activities its existence was perpetuated; in the latter the depositors, being mere creditors, were in no sense such a part of the corporation as would tend to influence the minds of the jurors in rendering their verdict. Aside from the presumption, which in the absence of evidence to the contrary must obtain, that a jury will be governed by the law and the evidence in the performance of their duty, there are no facts in this case which in the minds of reasonable men will sustain a different conclusion. The board of directors, upon being apprised of the bank's condition, ordered that it be closed. The State thereupon took charge of its affairs to collect and conserve its remaining resources for the benefit of its creditors. Other, therefore, than as evidentiary facts of the bank's condition within the knowledge of the defendant at the time the deposit here in question was received by him; the cause of that condition and the effect it would have upon the claims of its creditors were not matters of concern to the jury and could not in reason have been considered by them in determining the guilt or innocence of the defendant. It may, with stronger reason, be presumed that proof of the facts referred to, if they would have produced any effect on the minds of the jurors, would be to cause them to realize that without the action of the board of directors and the State nothing would have remained of the bank's assets to satisfy the claims of creditors. The closing of the bank, therefore, and the conservation of its remaining assets have been of material aid in enabling the creditors to obtain a repayment of a portion, at least, of the amounts due them. In this view of the situation nothing is left on which to base the supposition that the alleged relationship of creditors of the bank to certain jurors can furnish any ground to sustain the objection to their competency. The assignment is, therefore, overruled.

It is further contended that one of the trial jurors, A. N. Falkiner, remarked to one A. R. Walker, as the former was on his way to attend court, that in his opinion the jury would convict Minor H. Lewis, the defendant, of the offense with which he was charged. In a counter affidavit Falkiner denied that he had made the statement. Examined generally on his *voir dire* he answered that he had neither formed nor expressed an opinion concerning the guilt or innocence of the defendant. As we said in State v. Craft, 299 Mo. 332, 343, in reviewing the cases upon the qualifications of jurors: "It should be borne in mind that a juror's qualification is to be tried by the court. Having been thus tried the court's ruling in regard thereto

is attended with a presumption of correctness which can be overthrown only by evidence disclosing other than an impartial mind.''

We have also recently had occasion in State v. Poor, 286 Mo. 644, to review the leading cases on this question in this and other jurisdictions. The conclusion there reached is to the effect that whatever may be the source or the nature of the information possessed by jurors in regard to the case on trial, if it appears from their examination that they can and will give the accused a fair and impartial trial on the evidence, the knowledge they theretofore possessed of the case will not render them incompetent. This rule was expressly applied in State v. Garrett, 285 Mo. 288, in which certain jurors, otherwise competent, were held not to be disqualified because they had heard portions of the testimony on a former trial of the accused for the same offense.

III. **The Evidence.** Time in this case is an important element in determining the sufficiency of the evidence. A review of the defendant's contention in this regard requires a repetition of many of the facts. The deposit in question was made on the eighth day of October, 1925. The defendant, at the time and long prior thereto had been in sole control of the affairs of the bank. Four days after the deposit was made representatives of the State Finance Department appeared on the scene and in the discharge of their duty began an examination of the condition of the bank. A two-days' examination disclosed discrepancies in its books and also that the statement made by the defendant on the day of their arrival, October 12th, did not truthfully set forth the bank's real condition, and that it had a large amount of worthless paper in the nature of promissory notes made to the bank by persons who had borrowed money therefrom. The defendant, as president of the bank, was notified as to the result of the examination and ordered to remedy the irregularities found to exist in the bank's condition. The defendant, without denying the correctness of the examiners' report, agreed to conform to the requirements made by them in putting the bank in a safe and legal condition. Under the conditions prescribed by the examiners the defendant was permitted to continue operating the bank until the 16th day of October, 1925, when, upon a satisfactory showing that the requirements made had been complied with, the bank was to be authorized to continue in the transaction of business. There is evidence that the defendant made efforts to borrow money to remedy the condition of the bank, but failed to do so. Upon the termination of the time fixed by the examiners for a compliance with their order, nothing having been done to remedy the bank's condition, a meeting of the board of directors was called, at which the defendant and the examiners were present. Upon being apprised of the bank's

condition, of which the directors declared they had no previous knowledge, and that the defendant had failed to correct the same, the directors declared their inability to remedy the condition of the bank and adopted the resolution set forth in the statement, declaring the bank closed and ordering that it be turned over to the Finance or. Banking Department for liquidation. Concerning the correctness of the bank's condition at the time it was closed and its affairs turned over to the Banking Department there is no question. That it was insolvent or in á failing condition at the time its affairs were examined by the representatives of the Banking Department cannot be gainsaid. It must follow, therefore, as not only a reasonable but a necessary conclusion that it was in a like condition four days earlier when the deposit was received by the defendant. An institution, such as a bank or even a mercantile establishment, does not become in a failing condition in a day or a week, whether it is the result of mismanagement or fraud or for any cause, except a fell looting of its assets by robbery. It having been shown, therefore, that the bank was insolvent or in a failing condition on the 12th day of October, there is no escape from the conclusion that it was in a like condition on the 8th day of that month or four days before it was examined. Such was the relation to the bank of the defendant throughout the years that he had been connected with it, that it would be absurd to contend that he did not know of its condition at the time the deposit in question was received by him. The defendant's sole supervision and absolute control of the business of the bank has been stated in detail elsewhere in this opinion and its repetition here becomes unnecessary. It will suffice to say that the conduct of its business by him presents an italicised illustration of a one-man bank.

Many ingenious arguments are made by the defendant's able counsel as to the sufficiency of the evidence to sustain the defendant's guilt. An analysis will disclose that skillfully arrayed and adroitly presented as they are, they are more palliative of the defendant's conduct than probative of his innocence. A circumstance of sufficient importance to merit mention, is the time that has been found necessary to effect the liquidation of its assets. More than two and a half years have elapsed since it was placed by its directors in the hands of the State Finance Department and its affairs have not been settled. In the absence of any proof to the contrary the presumption is permissible that a resort to the sometimes-slow processes of the law have been found necessary to collect its assets. This, while but a circumstance, does not point to other than an unsafe and illegal condition of its affairs when they were taken over by the State.

IV. **The Giving and Refusing of Instructions.** The giving of instruction marked "J" is assigned as error. It is as follows:

"The jury are the sole judges of the credibility of the witness[es] and of the weight and value of their testimony.

"In determining such credit, weight and value, you should take into consideration the character of the witness; his or her manner on the stand and of testifying; his or her interest, if any, in the result of the case; his or her relations to or feelings for the defendant; the probability of his or her statements, as well as all of the other facts and circumstances detailed in the evidence.

"And in this connection you are further instructed that if you believe that any witness has wilfully sworn falsely to any material fact in issue in this case you are at liberty to disregard or to treat as untrue the whole or any part of such witness's testimony.

"By 'material fact' is meant any fact which tends to prove or disprove the guilt or innocence of the defendant.

"The court instructs the jury that the term 'wilfully' as used in these instructions means intentionally, that is not accidentally."

It is contended that this instruction is defective in that it does not contain the words "or the injured party" following the clause "his or her relation to or feelings for the defendant."

In this case the plaintiff or the injured party is the State of Missouri. However proper and necessary this clause may be in this instruction in a civil case between individuals, it is not applicable to a case where the State of Missouri is the complaining or "injured party." While it is true that an instruction on credibility of witnesses usually refers to "the injured party" or "parties in the case," its omission in a case where the State is the injured party is not reversible error.

The instruction hereunder attacked is distinguishable from the case of State v. Summers, 281 S. W. l. c. 125, cited by appellant. The discussion of this question in that opinion refers to the singling out of the defendant as a witness whose credibility as such should be weighed by considering his interest in the case. Such a procedure is palpably error. However, such is not the provision of Instruction "J" herein.

In addition, the question of the credibility of witnesses is a collateral issue and not an essential element of the offense. It was, therefore, the duty of the defendant, if dissatisfied with the instruction as given, to have requested one which supplied the alleged deficiency. This was not done. [State v. English, 308 Mo. 695, 274 S. W. 470; State v. Hadlock, 289 S. W. (Mo.) 945.]

Instruction "C" given by the trial court is objected to. This instruction is as follows:

"The court instructs the jury that if you find that the Clarence Savings Bank of Clarence, Missouri, failed on October 17, 1925, then such fact, if it is a fact, is prima-facie evidence of knowledge on the part of the defendant that the said banking institution was insolvent and in failing circumstances on October 8, 1925.

"The court instructs the jury that prima-facie evidence is such that raises such a degree of probability in its favor that it must prevail unless it be rebutted."

The basis of this contention seems to be that the facts in evidence did not justify the giving of this instruction, and that the court should have given an instruction defining when a bank had, in fact, failed. The first part of this contention we have discussed under the heading of the sufficiency of the evidence. The objection to the second part of the instruction is fully answered by instructions E, 4 and 21, given by the court. These instructions are as follows:

"E. The court instructs the jury that a banking institution is in failing circumstances and insolvent when it is unable to meet the demands of its depositors and other creditors, except the stockholders, in the usual and ordinary course of business."

"4. The jury are instructed that a banking institution is not insolvent and is not in failing circumstances, as meant in these instructions, unless and until the real and personal property of the bank has so far depreciated that it is unable to meet and pay its creditors, as their claims fall due, in the usual and ordinary course of the bank's business.

"21. The court instructs the jury that a bank is insolvent or in failing circumstances when, from any cause, it is unable to pay its debts in the ordinary or usual course of business. It is not expected to be able at once to pay every debt it owes, but must be able to pay or provide for its debts as they fall due, in the usual course of business.

" 'Insolvency' or 'failing condition,' when applied to a bank, means inability to meet its liabilities in the usual course of business.

"If, therefore, you find from the evidence, that on the 8th day of October, 1925, the Clarence Savings Bank, as a going bank, possessed sufficient assets to pay, within reasonable time, all of its liabilities, through its own agencies, then said bank was not insolvent or in failing circumstances on said date; and if you so find, you should acquit the defendant."

These instructions define when a bank is insolvent and in a failing condition and they have, in like terms, met with the approval of the court.

The giving by the court of the second paragraph of Instruction B is assigned as error. This paragraph is as follows:

"The court instructs the jury that in considering the condition of the bank as to its solvency or insolvency, you will not take into consideration its capital stock, surplus, and undivided profits."

This instruction, has by this court, been held to correctly declare the law in State v. Lively, 279 S. W. 1. c. 81, and State v. Meininger, 290 S. W. 1. c. 1003, par. 5.

It is contended that Instruction "D," given by the court, is erroneous. It is as follows:

"The court instructs the jury that what the defendant said against himself, if anything, in any conversation proved by the State, the law presumes to be true, but what he said for himself, in any conversation proved by the State, the jury are not bound to believe, but may believe or disbelieve it as they may believe from all the facts and evidence it is true or false."

This instruction correctly declares the law. It is not a comment on the evidence. It makes no reference to the testimony of the defendant which it does not include, but to a conversation of the defendant, if any, out of court, which has been proved by the State. In the form given it has frequently been approved by this court. In State v. Hayes, 262 S. W. (Mo.) 1034, Judge WHITE has (p. 1036, par. 5) compiled a list of many of the recent cases in which this court has approved the instruction in the form here given. There is, therefore, no merit in this contention.

The lack of a clear and succinct statement of the facts by either of the parties hereto, has burdened the court with a more careful examination of the voluminous transcript of the record and testimony than would have been necessary had our rules been complied with.

The contentions of the defendant as to prejudicial error we hold to be without merit, and the judgment of the trial court is affirmed. All concur.