————o————

STATE OF MISSOURI, Respondent, *vs.* WILLIAM W. TAYLOR, Appellant.

1. *Indictment—Murder—New trial—Prejudice of juror, what sufficient to warrant.*—Where it appeared, on a motion for a new trial on an indictment for murder, that one of the jury had formed such a prejudice against the accused that he could not be an impartial juror, the prisoner would be entitled to a re-trial, although the juror had formed no opinion as to his guilt or innocence, and his prejudice was formed merely upon rumor, and not upon evidence at the trial. In such case the grant of a new trial does not turn on the question of the competency or incompetency of the juror ·alone, but on the question whether the prisoner will have an impartial trial.

2. *Murder—Threats, etc., made by deceased and not communicated to prisoner.*—On an indictment for murder, proof of threats made by deceased against the prisoner, or wrongs done or slanders uttered, touching the family of the prisoner, knowledge whereof is not shown to have been communicated to the latter, is incompetent.

*Appeal from Webster County Circuit Court.*

*Nesbit & Ferguson, with Smith & Wisby*, for Appellant, cited: Const. Bill of Rights, § 22; State vs. Burnside. 37 Mo. 343; State vs. Wyatt, 50 Mo. 309; Sellers vs. People, 3 Scam. 412; State vs. Brown, 15 Kas. 400.

*J. L. Smith. Att'y Gen'l*, for Respondent, cited: State vs. Harlow, 21 Mo. 440; State vs. Sloan, 47 Mo. 604; State vs. Keene, 50 Mo. 357; Baldwin vs. State, 12 Mo. 223; McComas vs. Covenant Ins. Co., 56 Mo. 573; 3 Scam. 88; 2 Grat. 564; 7 Id. 619; 4 Blackf. 101; 3 Humph. 396; 5 Park. Crim. Rep. 644; Wagn. Stat. 1103, §§ 12, 13, 14; Dana vs.

Tucker, 4 Johns. 487 ; Lisle vs. State, 6 Mo. 428 ; State vs. Ross, 29 Mo. 51 ; Whart. Crim Law, 655, and note.

HENRY, Judge, delivered the opinion of the court.

At the November term, 1876, of the Hickory circuit court, defendant was indicted for the murder of Nathan Ghann, and on his application a change of venue was awarded to the circuit court of Webster county, in which he was tried and convicted of murder in the first degree, at the February term of said court, 1877.

The evidence all tended to show that the prisoner and Ghann met at the town of Elkton, in Hickory county, and that defendant and Ghann had a friendly scuffle, as it appeared to the witnesses, and immediately afterwards went into a store house. Defendant then said he could throw Ghann in a wrestle. Ghann said he could not. Defendant said he could, and Ghann again said he could not. Defendant thereupon told Ghann that he was a "d—d liar." He repeated the expression, when Ghann said it was more than he could stand, and pulled off his coat, and he and defendant, who held a knife in his hand, were about to fight, when bystanders interfered and separated them. Defendant was taken out of the house, but stood in front of the door abusing and cursing Ghann, challenging him to fight him, and made an unsuccessful attempt to get into the house.

This occurred on the 23d day of October, 1876, about noon. Defendant, who resided but a few miles from Elkton, got on his horse, went home and procured a double barreled shot gun, and returned to Elkton the same afternoon, stating on the way, in the presence of several parties, that "Ghann goes to hell before sun down," or "I'll send him to hell before sundown," witnesses differing as to which expression he used. Arriving at Elkton he sought the deceased, and, without any provocation then given, shot and killed him. This occurred in the latter part of the afternoon. Defendant, after killing Ghann, told several persons, at several different times, that he shot Ghann for abusing him that day at Elkton. He made that statement to the sheriff, who arrested him that night.

One of the defendant's sons testified that he saw Ghann the morning of the day he was killed ; had a conversation with him, in which Ghann said he had "done her (my father's daughter) just as he had done McCracken's wife." There was evidence tending to show that Ghann had had criminal connection with Mrs. Mc-Cracken. Witness further stated, that, after Ghann was killed, he asked his father what he had killed him for, and he said he killed him for the way he had treated "Bug" (his daughter's nick name). Two other witnesses for the defense testified to improper liberties taken by Ghann, on one occasion, with Miss Taylor, a young girl about fifteen years of age, daughter of defendant, and that Ghann afterwards told them he could and would have illicit intercourse with her.

There was no evidence that Wm. Taylor, the son who testified that Ghann said to him he had done with Miss Taylor as he had with McCracken's wife, ever communicated that fact to his father ; but, on the contrary, he left home early that morning, and had no conversation with the old man until after Ghann was killed. Nor was there any evidence that the two McCrackens, who testified to the conduct of Ghann towards Taylor's daughter, ever informed Taylor, or any of his family, of that fact, or that Ghann had said he would seduce her.

Defense offered evidence of threats made by Ghann against Taylor, which was excluded by the court, as was also evidence to the effect that he had seduced women in Tennessee before coming to this State.

Defendant asked the court to instruct the jury on the subject of emotional insanity, which the court refused to do. It is unnecessary to copy the instruction. The evidence did not warrant the instruction asked, or any instruction on that subject.

There was no evidence of the seduction of the daughter, except that of William Taylor and the two McCrackens ; no evidence that the facts which they pretended to know were ever communicated to the defendant; and stating why he had killed Ghann, to a half dozen or more persons, at different times, he gave as a reason that Ghann had abused him that day at Elkton ; and the only witness who says that he gave the seduction

of the daughter by Ghann as the reason for killing him, was his son William.

The court properly refused to admit evidence of threats made by Ghann against defendant. The evidence establishes beyond a doubt, that defendant sought Ghann and shot him at a time when Ghann was making no demonstration against him. It is not pretended that defendant, when he killed Ghann, was acting in self defense. Defendant was the aggressor in the difficulty in the forenoon, and when shot by defendant, Ghann was not only making no attempt to injure defendant, but was unarmed and endeavoring to escape from him.

The court also properly excluded the evidence offered to the effect that Ghann had seduced women in Tennessee. It would not have justified the husbands, fathers or brothers of the seduced women in Tennessee in taking his life, and certainly it was not for the defendant to avenge them by slaying the seducer.

Another question of more difficulty is presented by the motion for a new trial. David Smith, one of the panel of forty jurors summoned in the case, stated, on his examination on the *voir dire*, that he had not formed or expressed an opinion as to the guilt or innocence of the defendant. After the trial, in support of the motion to set aside the verdict, defendant produced and read to the court the affidavits of Samuel E. Cole, John. W. Rice and George M. Todd.

Cole swears, that at that term of the court at which defendant was tried. he heard Smith say that "there were so many cases coming here on change of venue that some of them ought to be strung up."

Rice swears, that a day or two before the jury was summoned in the Taylor case, he heard David Smith say; "I have heard something about the murder, or I have heard about it, and—damn Taylor! he ought to be hung," or words to that effect.

Geo. M. Todd swears, that " on Saturday the 24th, or Sunday the 25th, March, 1877, some men came along, and Smith asked who they were. I replied : They are from Hickory county, I believe. Smith then said : ' I understand there is a man to be tried here at this term from that county, for murder, and from

what I hear he ought to be hung, or will hang,' or words to that effect."

David Smith's counter-affidavit was read by the prosecution, in which he says : "The statement made by Rice is erroneous. I did not know the name of Taylor until I was sworn to answer questions. I might have made the remark that he would hang, and might have used the word 'D—n!' for I am in the habit of swearing, or might have said, speaking of the man from Hickory county, charged with murder, that 'from what I have heard, d—n him! he will hang,' for I was under the impression that I had heard some one, whose name I do not now remember, saying that the Hickory county murder case was a bad case; that the man (meaning defendant) would be hung; but whoever that person was, he was not a witness in the case, nor repeated to me, nor in my presence, any of the facts or circumstances of the murder or killing, nor did any one else, nor did I ever hear any part of the testimony, or any of the circumstances of the killing until I heard it from the witnesses, as a juror."

As to the statement of affiant Cole, Smith, in his affidavit, states that he thinks it substantially true and correct, but thinks the remarks testified to by Cole had reference to a man named Harb, against whom an indictment was pending in the Webster circuit court, on change of venue from Hickory county, and that he had not then heard of the Taylor case. He denied the remark attributed to him by the affiant Todd.

Whether, for the alleged cause, a new trial should have been granted, does not depend upon the competency or incompetency of Smith as a juror, on the facts disclosed by the affidavit. The statute, in trials for murder, requires a panel of forty jurors to be summoned, and allows the defendant a peremptory challenge of twenty. He has the right to know of each one of the forty if he has formed or expressed an opinion as to his guilt, and although one who, on rumor alone, has formed an opinion, is a competent juror, yet the defendant has a right to know whether he has, under any circumstances, formed an opinion, so as to make such challenges as will leave on the panel only those who are en-

tirely free from bias.   The accused is entitled to a "public trial by an impartial jury of the county," and is not to be deprived of this constitutional right by the inadvertence or willful falsehood of those who are placed upon the panel to try him.   The remarks attributed to the juror, Smith, showed that he was prejudiced against the defendant personally, and against all persons whose cases had been brought to Webster county on change of venue.   Whether he had heard evidence or not, or formed an opinion or not, as to the guilt or innocence of defendant, such a state of mind and heart as would prompt him to curse the defendant, and declare, "that somebody from Hickory county ought to be strung up," are enough to show that a panel composed of that kind of material would be anything but an impartial jury.   The juror, in his affidavit, does not positively deny the remarks attributed to him, while the affiants, on the other side, testify positively to his statements.   The juror is not corroborated by any one, nor was any attempt made to show that affiants on the part of the defendant were unworthy of belief.

In the State vs. Burnside (37 Mo. 347) the remark attributed to the juror was, that he believed defendant guilty, and that he ought to be punished.   The juror denied, on oath, that he had made the remark, and one working in the shop with him at the time of the alleged remark, testified that he did not hear it, and there were several affidavits proving the character of the juror for veracity and integrity to be good.   This court held that a new trial should have been granted.

In the State vs. Wyatt (50 Mo. 309) the remark attributed to Whitaker, the juror, was, that he believed defendant guilty, and that he ought to be punished.   Whitaker, in his affidavit, admitted it, but said he was thinking of a different case.   This court held, in that case, that a new trial should have been granted.

The case at bar is a much stronger one for defendant.   In the State vs. Wyatt, if the juror, in his affidavit, told the truth, the defendant could not have been prejudiced by the opinion he expressed or entertained ;   for while it was as to defendant's case by

title, it was a mistake, and the juror had in his mind a different case, and confounded names.

Conn vs. Hailstock (2 Grat. 564), and Com. vs. Curran (7 Grat. 619), hold a contrary doctrine. In Willis vs. People (5 Park. Crim. Cas. 621), the affiants did not give the language of the juror, but what they thought it imported, and Ingalls J., who delivered the opinion, says: "In this affidavit Layman merely adopts the statement of Jones and Houghtailing, and does not undertake to give the language used by Shaw, but merely his conclusion deduced therefrom." This criticism upon the affidavits seems justified, as Shaw expressly denies having made any such statement. or having expressed any such opinion as is attributed to him in these affidavits.

The joint affidavit of Jones and Houghtailing, referred to in the foregoing paragraph, stated that Shaw, the juror, "gave it as his opinion" that the said Willis ought to, and should suffer death for the killing of Mrs. Phelan.

In the case in 3 Scammon, 88, McGregg vs. State (4 Black. 101), and State vs. Brown (15 Kas. 400), referred to by the State, the questions arose on the examination of the jurors on their *voir dire*. and are not pertinent to the question we are considering. Sells vs. People (3 Scam. 413) sustains the former decisions of this court.

We are satisfied with the doctrine held in those cases, and consequently the judgment will be reversed and the cause remanded. The other judges concur.