## MILLER *v.* THE STATE.

1. Where the credibility of a witness was open to attack because, upon a previous occasion when it was apparently his duty to speak out, he had not disclosed any knowledge whatever as to certain very material matters, but at the trial testified that he did have knowledge of the same on the occasion referred to, it was competent to sustain the witness by proving that he kept silent on that occasion because he was advised to do so.

2. A juror whose deceased wife had been a second cousin of the accused in a criminal case was not disqualified from serving on the trial thereof, unless the deceased wife left issue; and where, on such trial, the State alleged the incompetency of the juror on the ground that he was related by affinity to the accused, it carried the burden of showing that the former relationship was still subsisting, by proving affirmatively that the deceased wife did in fact leave issue.

3. It was error, upon the trial of an indictment for murder, to admit in evidence against the accused declarations made by a third person before the homicide was committed, which, though uttered in the presence of the accused, amounted, at most, to no more than an implied threat by the person making them against the life of the deceased, and contained nothing tending to incriminate the accused or call for a repudiation of them upon his part, and which, there being no evidence of any conspiracy between him and the declarant to commit the murder, nor any legal reason rendering them admissible, were totally irrelevant to the issue on trial.

January 20, 1896.

Indictment for murder. Before Judge Janes. Paulding superior court. August term, 1895.

Clabe Miller and Howard Parton were jointly indicted for the murder of Wesley H. Roberts. They severed. Miller was tried, convicted and sentenced to life imprisonment; and his motion for a new trial was overruled. The material grounds of the motion are sufficiently apparent from the opinion, excepting those referred to in the third division, which are as follows:

Error in refusing to exclude, on motion of the defendant, the following testimony of W. J. Parris: I was trying to advise Howard Parton to go home and work with his father; work was scarce and bad weather, and he was not getting any work to do; and he just said he would go home or go home to his father, if it was not for one or two things. Miller, the defendant, was present at the time. I said, "What is it?" He said, "If I go home there is two or three I will be obliged to kill," or bound to kill if he should go home. Liza Jane, my daughter, said, "Howard, if I was to guess would you tell me?" He said, "Yes." She said, "Is Oscar Campbell one?" He said, "Yes, that is one;" and she guessed two or three more, I don't recollect who they were; and in this talk he said, "There is old Hogan Roberts; the damned old rascal ought to have been killed several years ago; he don't do anything but undermine people. He runs to Dallas and undermines people and reports them for dealing in whisky and toating concealed weapons." That is what he said about Mr. Roberts. Clabe Miller turned to my wife and said, "Mrs. Parris, did you ever know anybody to get rich by work?" She said, "No, I don't know that I did, but I have known people to make a living by work." He said, "I am not able to make a living by work, and there is a living here on this earth for me, and I am going to have it." That is all I heard Miller say in my presence.—Defendant moved to exclude the testimony as to Parton's sayings to Parris, on the ground

that the evidence failed to show any conspiracy between said Parton and defendant, and for that reason Parton's sayings were not admissible on the trial of Miller.

Error in not excluding, on motion made upon the ground just stated, the following testimony of Eliza Parris: Pa he commenced talking to Howard and told him to go home to his pa; he said he thought it was the best place for him; and Howard said he would if it was not for one thing. He said, if he should go back to Hulseytown, he called it, there were two or three he would be bound to kill; then he was ready to die. I said, "Howard, if I guess, will you tell me?" He said, "Yes," and I guessed Oscar Campbell; he said, yes, he was one. I guessed Bill Mosley; he said nothing; and I never thought to guess anybody else, and he never said anyhow. He said, "Old Hogan Roberts, the damned old rascal, he ought to have been killed some years ago. He is always ready to undermine people, reporting them for toating concealed weapons and selling liquor." That is all I heard him say. Clabe Miller said to ma, "Mrs. Parris, did you ever know a poor man to get rich by work?" Ma told him, no, they always could make a good living if they tried. He said he was not able to work, and there was a living here on earth for him and he was going to have it. That is all I heard him say. The time that Miller had this conversation with my mother was not at the time Parton had the conversation with father and me. Miller's conversation with mother was that evening, and Parton talked it that night. When Miller had the conversation stated with mother, Parton was sitting over there in the corner. When Parton was talking that night, Miller was there in the room. I don't know whether Miller heard Parton's conversation or not. I guess he did, but I don't know.

Error in charging the jury: "The statement of Parton is not evidence against Miller, and it was only admitted without objection, but objection afterwards made; but I

only allow it to stay in to explain the remark of Miller, or remark that he is charged to have made from the testimony of one of these witnesses, that these remarks were made together. If these remarks were made at different times, if Parton remarked that he intended or wanted to kill the deceased, or that the deceased ought to be killed, or anything of that kind, at one time, and Miller made any remarks about not making a living by work or any such remarks afterwards, or at a different time, you could not consider it at all in this investigation. If you believe that these remarks were made at different times, then it ought not to weigh anything against Miller; and if you believe that these remarks were made at the same time, it is only admitted to explain the remarks of Miller, and, in the same connection, what Parton said, if he said anything of this sort, could not hurt Miller, unless Miller assented to it in the same way." This charge is assigned as error, because the evidence failing to show any conspiracy between Parton and Miller, or that they were engaged in a common enterprise against the deceased of any character whatever, the remarks of Parton were not evidence against Miller for any purpose whatever; and because the charge as to the purpose of the admission of said remarks of Parton, is an expression of an opinion by the court that a connection existed between the remarks of Parton and the remarks of Miller, and that Parton's remarks would explain or tend to explain the remarks of Miller.

*Washington & Moon, W. E. Spinks* and *J. J. Northcutt,* for plaintiff in error.

*J. M. Terrell, attorney-general, W. T. Roberts, solicitor-general,* and *A. L. Bartlett,* contra.

LUMPKIN, Justice.

1. The evidence in this case discloses the perpetration of a terrible assassination. W. H. Roberts was shot and killed in his own house, at night, while sitting by his fire-

side in the presence of his family. Two persons, the plaintiff in error, Clabe Miller, and another, were indicted for the murder.

The material question at issue upon the trial of Miller was one of identity—whether or not he was one of the persons who actually committed, or participated in, the homicide. A daughter of the deceased testified at the trial that on the night of the killing she recognized the accused as one of her father's assailants. It was shown that on a previous occasion, when the circumstances were such as to render it incumbent on her to disclose what she knew as to the identity of the person, or persons, by whom her father was murdered, she remained silent. This fact, unexplained, would undoubtedly have left her credibility open to attack; and the court therefore very properly allowed her to testify that she had maintained silence on the previous occasion referred to, because she was advised to do so. Indeed, it appears that her father, before dying from the wounds inflicted upon him, had enjoined her to pursue this course.

2. At the trial, one Johnson, after he had qualified and had been accepted by both the State and the accused as a juror, stated that his first wife, who was dead, was a second cousin of the accused. The court, over the objection of the latter, directed that the juror go off for cause. It did not appear whether or not the deceased wife left issue. Under these facts, the court erred in holding that the juror was incompetent. The general rule is, that relationship by affinity is dissolved by the death of either party to the marriage which created the affinity, provided the deceased party left no issue living. Thompson & Merriam on Juries, p. 181, Dearmond ct al. v. Dearmond, 10 Ind. 191. "Affinity is a principal ground of challenge, either to the array or to the polls, and it continues if there be issue of the marriage." Vannoy v. Givens, 3 Zab. 201. See, also,

Cain v. Ingham, 7 Cow. 478, and note at the bottom of page 479. The State, having set up the incompetency of the juror, carried the burden of proving that the former relationship between him and the accused was still subsisting, by proving affirmatively that the deceased wife left issue. State v. Shaw, 3 Ired. Law, 534, and authorities there cited.

3. The main ground upon which we rest our judgment granting a new trial in this case is stated in the third headnote. We have directed the reporter to set forth the evidence which we there ruled was improperly admitted. A perusal of it will show that it ought to have been rejected, and the note in question sufficiently discloses the correctness of our judgment in holding it inadmissible.

*Judgment reversed.*