# THE STATE v. DEWEY HOBSON PALMER, Appellant.

### Division Two, March 13, 1920.

1. **EVIDENCE: Other Disconnected Difficulties.** Evidence of quarrels and violent threats by defendant with other parties, prior to the homicide but on the same night, with which deceased was in no wise connected and was not present, is not admissible.

2. **VENUE: How Proven.** Venue in a criminal case may be established in the same way as any other material fact. It may be established by direct testimony, or it may be inferred by the jury from all facts and circumstances in evidence from which the inference may be reasonably drawn. The inference that the homicide was committed in the county in which the information was filed may be drawn from testimony showing that a certain school house was in the county and west of its east county line, and that deceased was shot 650 feet west of the school house.

Apeal from Howard Circuit Court.—*Hon. A. W. Walker, Judge.*

REVERSED AND REMANDED.

*R. M. Bagby* and *Sam C. Major* for appellant.

(1) The record in this case is silent as to where this offense was committed. The evidence shows that it was close to the boundary line between Howard and Boone counties. The only evidence in the record as to the venue is that the offense was committed near Arnett's school house, but the record is silent as to what county Arnett's school house is located in. The court can take judicial notice of the boundaries of a county, but it cannot determine that a school house is in a certain county where the evidence is silent on the subject. State v. v. Hartnett, 75 Mo. 251; State v. Hughes, 82 Mo. 86; State v. King, 111 Mo. 576; State v. McGinnis, 74 Mo. 245;

State v. Burgess, 75 Mo. 541; State v. Bush, 136 Mo. App. 608. (2) The court erred in admitting the illegal and irrelevant testimony concerning the details of a difficulty which took place twenty minutes before the difficulty between the deceased and this defendant, to-wit: the difficulty between the defendant and Frank and Nina Patton and Bill Patton. This difficulty had nothing whatever to do with the difficulty in which the deceased was shot. It transpired, according to the testimony of the State's own witness, twenty minutes prior to the difficulty between deceased and the defendant, and after the event had closed and the Pattons had gone a quarter of a mile across the Ewing field and the defendant had gone down the road with his brother and was waiting for the witness, Newt Hill. It was not a part of the *res gestae* and should not have been introduced under this guise. Wharton's Criminal Evidence (9 Ed.), sec. 264, p. 198; State v. Guinn, 174 Mo. 680.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) The evidence concerning the altercation between appellant, and the Pattons and Bessie Level, should not have been admitted. The deceased was not present, and took no part in this affair, and did not encounter appellant until after this quarrel was over. 21 Cyc. 929; State v. Swain, 68 Mo. 612; State v. Clayton, 100 Mo. 520; Joyce v. Com., 78 Va. 290; Sewell v. Com., 3 Ky. L. R. 86; State v. Crabtree, 111 Mo. 141. (2) The question of venue is always a question of fact, and it may be proved like any other fact. State v. Burns, 48 Mo. 438; State v. West, 69 Mo. 404; State v. Shour, 196 Mo. 223; State v. Lee, 228 Mo. 497; State v. Schatt, 128 Mo. App. 624; State v. Gow, 235 Mo. 325; State v. McCawley, 180 S. W. 870.

MOZLEY, C.—On the 14th day of April, 1917, the prosecuting attorney of Howard County, in vacation of

the court, filed an information against defendant, Dewey Hobson Palmer, charging him with having shot and killed Millard P. Wright under such circumstances as to constitute murder in the second degree. The information charges that the killing occurred in the County of Howard and State of Missouri. On the 6th day of November, 1917, defendant was put on trial in said county and convicted by a jury of murder in the second degree and his punishment fixed at twenty years in the State Penitentiary.

At the close of the State's case defendant demurred to the evidence, which was overruled by the court, and again at the close of the whole case the demurrer was renewed, but met a similar fate. Exceptions were duly preserved to these rulings and are set forth in the record before us. Motion for new trial was filed within the time allowed by law and, on the 1st day of April, 1918, it was overruled by the court and exceptions duly saved. The case is regularly here on defendant's appeal.

On the night of January 6, 1917, Jim Skinner, who lived in the eastern part of Howard County, near the dividing line between that county and Boone County, gave a dance, at which both defendant and the deceased were present, but there was no trouble of any kind between them. Defendant was sober. Deceased and his associates were drinking; had whisky with them, and deceased was more or less under its influence. A Mrs. Bessie Level, to whom defendant was paying court and whom he afterward married, was at the dance, in company with Bill Patton. When the dance subsided (which was past eleven o'clock at night) Mrs. Level and her escort, and Frank Patton and his wife, Ina Pearl Patton, and their three children, started home. Defendant wishing to speak with Mrs. Level rode up behind them on his horse and called to Mrs. Level, who stopped to talk with him and the conversation soon developed into a vulgar quarrel between defendant, Mrs. Level and Frank Patton and his wife, in which defendant it is said by the testimony of the Pattons to have made the most

dire threats against anyone who dared to accompany Mrs. Level, insisting that he would attend to that duty himself, and coupling his threats with the most shocking obscenity and vile epithets. The matter terminated, however, in Mrs. Level and the Pattons, after the quarrel was over, proceeding on their way towards the home of Pattons.

After these parties had started through the field towards their home, Arthur Palmer, a brother of defendant, who had come during the quarrel, and defendant got on their horses and started west to go home; they had gone a short way when Newt Hill called to them to wait, as he was going their way. They waited for him and while so doing they heard some horses coming down the road towards them; they turned their horses around in the road and stood there. A loose mule was running towards them, and they could see horses with riders on them strung along the road coming toward them. Defendant told his brother to catch the mule, which he did, and was holding it by the bridle when the approaching parties (who proved to be deceased, Millard Wright, and Paul Cook) came up.

The testimony as disclosed by the record is conflicting from this time as to what happened between the time of the arrival of deceased and Cook, and what was said and done by defendant and deceased just before and when the fatal shot was fired. This conflicting testimony was submitted to the jury and their finding was favorable to the contention of the State.

At the trial of the case the court admitted, over the objection of defendant, all of the testimony in relation to the quarrel or difficulty between defendant and the Pattons which occurred before the trouble between deceased and defendant and when deceased was not present. As the admission of this testimony is challenged by appellant as being reversible error, we set it out in full:

Mrs. Frank Patton, stated as follows: "We took the southeast path through the woods to the main road. As

we were passing through the woods to the main road, the defendant, Hop Palmer, rode up behind Bessie Level and told her to come back, that he had something to tell her. He called her three times before she went He stepped off his horse and took hold of her arm and said: 'Now, God damn you, you will walk with me to Ina Patton's tonight or there won't any son of a bitch in this crowd go up this path.' He asked Bessie why she came to the dance, and says: "I told you I would kill you, if you came to the dance.' Bessie left Hop Palmer just as we crossed the main road and rejoined Bill Patton. When we got to the road I told Hop we had heard enough —not to go any further. He threatened to kill every son of a bitch of a Patton, and said there was nothing to them and never was. He asked my husband out into the road. I would not let him go and told Hop he was like the Oklahoma wind, that I had heard it before. I told him to go on down the road home. When he asked us to go out in the road, he threw off all his coats. When we left him, he was cursing, but I did not listen any longer."

Frank Patton testified: "After we left Skinner's house, I saw the defendant, Hop Palmer. He came down the path following me and called Bessie Level. He told Bessie he wanted to see her. He got down off his horse. He took Bessie Level by the arm and he says, 'I am going to walk with you to Ina Patton's.' He says, 'No son of a bitch walks up through these woods if I don't.' He walked with Bessie to the big road and there threw off his coat down in the road. My wife says: 'Go on down the road Hop. You are like the Oklahoma wind.' He says to my wife: 'The damned son of a bitch, come out in the road and I will show you what I can do for you;' and he says: 'Frank, if I ever catch you off your farm I expect to kill you.' And at that we left." Substantially the same facts were testified to by Will (Bill) Patton.

I. The State's contention that the filing of the bill of exceptions is not shown by the record, we think is not well taken. In our opinion the fact of its filing does

34—281 Mo.

**Bill of Exceptions.** sufficiently appear by the record and that it is our duty to review the bill in passing on the case.

II. It is earnestly insisted by appellant that the testimony set out above relates solely to a difficulty with other parties and that it is wholly disconnected with, and **Other Difficulties.** different from, the offense charged against defendant in the information, and that it was therefore error prejudicial to his defense against said charge.

It will be observed that there was no trouble and had been none between deceased and defendant until they met in the road where Arthur Palmer, a brother of defendant, had, at defendant's request, caught the runaway mule. It was at that time and place that the difficulty between the two and in which deceased lost his life occurred. The trouble defendant had with the Pattons had ended some time before and they were gone. Nothing that was said or done in the Patton quarrel in any way referred to deceased, nor was deceased present while it was going on.

The State concedes in its brief and in oral argument at our bar that the admission of said testimony was error, and the authorities cited by the State in its brief fully support the concession made. [21 Cyc. 929; State v. Swain, 68 Mo. l. c. 612; State v. Clayton, 100 Mo. 520, and State v. Crabtree, 111 Mo. l. c. 141.]

These authorities expressly hold that "evidence of a previous difficulty between defendant and a third person with which deceased had no connection and which was not a part of the transaction in which deceased was killed, is not admissible."

III. Appellant makes the point that the venue was not proven. Venue in a criminal case may be established **Venue.** the same way as any other material fact, that is, by direct testimony, or it may be inferred by the jury from all facts and circumstances in evidence in the event that such facts and circumstances reasonably jus-

State v. Palmer.

tify such inference. As there is no direct evidence showing the venue of the crime charged to be in Howard County we look to the facts and circumstances in proof to ascertain if the jury were justified in drawing the inference therefrom that it was in fact in said county.

The proof shows that Jim Skinner (who gave the dance) lives in Howard County about two miles west of the Boone County line; it shows that Frank Patton and his family (to whose home deceased was taken after he was shot) lives in Howard County about one mile from the Boone County line; it shows that a public road extends east and west; that Skinner lives a short distance north of this road and Patton a short distance south of said road. This road passes by the Arnett school house which is in Howard County and is the point that the county highway engineer measured from, westward a distance of 650 feet, to the point in the road where deceased was killed. We think under this testimony and under the authority of the cases of State v. Sanders, 106 Mo. 195; State v. Lee, 228 Mo. 497, and State v. McCawley, 180 S. W. 870, and under the further fact that defendant was informed against in Howard County and the jury instructed that they must find that the alleged crime was committed in Howard County, that their conclusion that the situs of the offense was in Howard County was a legitimate and reasonable deduction therefrom. We therefore overrule this contention.

IV. Appellant makes a number of additional assignments of alleged error which we think are unnecessary to be reviewed, since upon retrial they may be avoided.

It follows from what has been said that the case will have to be reversed and remanded for retrial. It is so ordered.

*Railey* and *White, CC.,* conur.

PER CURIAM:—The foregoing opinion of Mozley, C., is hereby adopted as the opinion of the court. All of the judges concur.