OVERTON, J.
 

 Defendant was indicted for the murder of Calvin Holden, and was convicted of manslaughter. The record contains six bills of exception, but defendant relies on only two of them for a reversal. The four bills abandoned possess no merit whatever.
 

 The first bill upon which defendant relies for a reversal is one that was taken to a ruling of the court, permitting one of the state’s witnesses, Bamber Husser, to explain on redirect examination why he made statements directly in conflict with those he made on the preliminary trial of the accused. The defendant strenuously urges, and did so before the trial court, that it was improper for the witness to make the explanation, especially because whatever the explanation might be it involved something said out of the presence of the accused. The witness explained by saying that the difference between his testimony on the two trials was due to the fact that one Dannie Vernon, of whom he was afraid, on the day of, and immediately before, the preliminary trial, told him to testify as he did on that trial,, and that he was afraid to tell the truth on that occasion.
 

 It is proper to permit a witness to explain why his evidence on one occasion, concerning the same matter, conflicts with that given on a prior occasion. Hairrell v. State, 16 Ala. App. 110, 75 So. 702 ; Cleveland v. State, 20 Ala. App. 426, 103 So. 707 ; People v. Nakis, 184 Cal. 105, 193 P. 92 ; Smith v. Commonwealth, 206 Ky. 728, 268 S. W. 328 ; People v. Davis, 217 Mich. 661, 187 N. W. 390 ; State v. Harris, 106 Or. 211, 211 P. 944 ; Williams v. State, 88 Tex. Cr. R. 87, 225 S. W. 177 ; Blackburn v. State, 100 .Tex. Cr. R. 580, 272 S. W. 173. It was not necessary to the admissibility of Vernon’s statement to the witness that it should have been made in the presence of the accused, nor was the statement objectionable as hearsay evidence. It was, in fact, primary evidence of what brought about the conflict between the evidence of the witness, given on the two occasions.
 

 The second and last bill, relied on by defendant, which is the one numbered 5 in the transcript, was taken to the action of the court, in excluding, upon objection urged by the state, evidence to show the bad and dangerous character of the deceased and his criminal record, in support of defendant’s evidence to the effect that, while he was at home alone, in the day time, he heard some one battering and tearing his front screen door; that he slipped around to the front of the house where he saw deceased and his nephew trying to break in the house; that he holloaed at them; and that the deceased then
 
 *74
 
 grabbed his shotgun and whirled towards him, when he fired and killed the deceased. The evidence offered and ruled out, in support of defendant’s plea of self-defense, consisted of certified copies of the record in five cases, resulting in conviction, or, where the record was lost, of an affidavit showing the fact and an outline of its contents. One of these convictions was for manslaughter, committed between 1S90 and 1892; one for selling intoxicating liquor without a license, committed in 1907; two for the burglary of two stores in the nighttime, committed in 1907; and one for receiving stolen property, committed in 1923. In addition to the foregoing, with the same end in view, defendant offered to show, by one Eugene Givens, that deceased was with one Calvin Brooks for forty years, and that deceased or Calvin Brooks, it is not clear which, was a dangerous man, and had served two terms in the penitentiary of this state for homicides committed, and had killed a man in the state of Mississippi.
 

 These offerings were made to show who was the aggressor in the difficulty, and also to corroborate the testimony of defendant, especially by showing, we take it from defendant’s brief, the likelihood that the deceased was breaking into defendant’s home, as testified to by defendant.
 

 The evidence was excluded by the court, on objections urged by the state, for the reason that defendant was seeking to establish bad reputation and dangerous character by proving specific acts, and also because there was no proof of an overt act or hostile demonstration by the deceased against the accused.
 

 There can be no question that, under the plea of self-defense, under proper circumstances, the defendant has the right to show the dangerous character of the deceased, but this must be shown, not by proof of specific acts, but by evidence of his general reputation as a dangerous person. Thus, as said in 30 C. J. p. 174, § 397, verbo “Homicide”: “The inquiry as to the character of deceased must relate solely to his general character for violence, ferocity, vindictiveness, or bloodthirstiness. Thus, it is not admissible to prove decedent’s general bad conduct or immorality. * * * ■ Deceased’s character must be shown by general repute in the community and not by evidence of specific acts. * * * ” See, also, State v. Fontenot, 50 La. Ann. 537, 23 So. 634, 69 Am. St. Rep. 455.
 

 Of the record evidence offered, only three of the five records — those for manslaughter and burglary — have any tendency to show the dangerous character of the deceased. ' These show specific acts only, and it must be conceded, though not necessary to a decision of the case, acts very remote from the date of the homicide, which was committed in October, 1929. It is true that the evidence of conviction of crime may be introduced to impeach a witness by showing his lack of morality, but the rule does not extend, by analogy or otherwise, to establishing the dangerous character of the deceased. ' The parole evidence tendered to show the dangerous character of the deceased is subject to the same objection as the record evidence offered. If received, it would have shown only specific acts.
 

 These observations are sufficient to justify the ruling of the trial court However, there are other reasons that justify the ruling of the lower court. Article 482 of the Code of Criminal Procedure provides that: “In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.” Here the evidence does not justify the finding of an overt act or hostile demonstration.
 

 
 *76
 
 It may be conceded, without so deciding, for the purpose of this case, that, as substantially urged by defendant, article 482 of the Code of Criminal Procedure does not affect the jurisprudence, established by this court, prior to the adoption of the Code, to the effect that, in a certain class of eases, usually those in which the state depends upon circumstantial evidence for a conviction, where the evidence leaves i't doubtful who was the aggressor, resort. may he had to evidence of threats by the deceased against the accused or of the dangerous character of the deceased, to show who was the aggressor, but this is not such a case. Here there was an eyewitness to the killing, and the evidence seems to be clear that the accused was the aggressor.
 

 Nor was the evidence, tendered and offered to show the dangerous character of the deceased, admissible for the purpose of corroborating the evidence of defendant that the deceased was trying to break into his house when killed, by increasing the chances that defendant’s evidence to that effect was true. While there is apparently some conflict of authority as to the admissibility of evidence of a person’s habits and character to corroborate a defendant, which, however, it may not be impossible to reconcile, nevertheless, we think that for the same reason that evidence of other offences committed, is not admissible to increase the likelihood that a defendant committed a subsequent crime, charged against him, the evidence, tendered and offered in this case to corroborate defendant, was not admissible for that purpose. See 30 O. J. § 396, verbo “Homicide,” pp. 173, 174.
 

 We find no error in the proceedings had.
 

 For the reasons assigned, the verdict and the sentence appealed from are affirmed.
 

 O’NIELL, O. J., dissents from the rulings on the second and last bill relied on by appellant.