**STATE** of Missouri, Respondent,

v.

Thomas P. **HERMANN**, Appellant.

No. 44801.

Supreme Court of Missouri.

Division No. 1.

Oct. 10, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 14, 1955.

Henry G. Morris, James C. Porter, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant was found guilty of murder in the second degree, sentenced to 25 years imprisonment, and has appealed from the judgment entered.

The State had evidence to show that defendant came to the home of Dr. Cecil A. Z. Sharp and shot and killed him while he was standing in the kitchen doorway of his home in Ladue, St. Louis County. Dr. Sharp's son, 16 years old, had heard voices outside and opened the door. Dr. Sharp came to the door and was standing there by his son when he was shot. The bullet that struck Dr. Sharp went through the screen door which was closed. Defendant lived on adjoining property with his mother, sister and brother. His defense was alibi based on their testimony that he did not leave the house that evening. Since this case must be reversed because of concealment by a juror (who served as foreman and signed the verdict) of information concerning his qualifications, it is not necessary to make a detailed statement of the facts.

On voir dire examination the members of the panel, including juror Arthur C. Michel, were asked (in questions by the Assistant Prosecuting Attorney) if any of them had ever been accused of a criminal offense. After one member of the panel told of being held, tried and acquitted for manslaughter due to an automobile accident, they were again asked: "Anyone else had any difficulty with the law that was of a more serious nature, of course, than traffic offenses?" After another juror told of being involved in a case which turned out to be a civil libel suit, they again were asked to say whether they or any immediate members of their families had been involved in any criminal action. Juror Michel remained silent although he had been convicted in 1942 in the United States District Court, Eastern District of Missouri, of sending obscene letters through the mail, a felony, sentenced to two years imprisonment and served the sentence in a United States Penal Institution.

The State relies on Sec. 494.050 (statutory references are to RSMo and V. A.M.S.) as follows: "No exception to a juror on account of his citizenship, nonresidence, state or age or other legal disability shall be allowed after the jury is sworn." The applicable rule has been thus stated: "The policy of our law is that the qualification of a juror should be de-

termined before the trial begins; that such qualification is a matter of exception; and that the parties must develop such information and take such exceptions, as they desire to preserve for appellate review, before the jury is sworn. [Citations.] An exception is made to this rule so that 'where it is shown that matters which might establish prejudice or work a disqualification were actually gone into on the voir dire, and false answers were given, or deception otherwise practiced, the court will be permitted to consider the question on the motion for a new trial, either upon oral testimony taken at a hearing on the motion, or by affidavits'; because 'the situation is closely akin to that when a new trial is sought for newly discovered evidence; and the complaining party is not to be left without a remedy for the want of a prior objection and exception, when the disqualification of the juror was one which he by due diligence could not have learned sooner.'" Massman v. Kansas City Public Service Co., Mo.Sup., 119 S.W.2d 833, 837; see also Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711; Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459. We find from the record herein there was such concealment and deception on the part of juror Michel as to make this exception applicable in this case; and we must hold this was prejudicial to defendant for the reasons stated in the above-cited cases. The State further contends that a conviction in a federal court is not a disqualification. Sec. 496.100, applicable to St. Louis County, provides: "None of the following persons shall be permitted to serve as jurors: * * (5) Any person who has been convicted of a felony". In State ex rel. Barrett v. Sartorious, 351 Mo. 1237, 175 S.W.2d 787, 149 A.L.R. 1067, we held that such broad language without any stated limitation disqualified from voting one who had been convicted of a felony in a federal court. Certainly the reasons given therein are applicable here. There is even greater reason for such a conviction being a disqualification of a juror than a voter because Sec. 494.010 provides that every juror shall be "sober and intelligent, of good reputation * * * and otherwise qualified." Certainly a conviction for felony in a federal court has some bearing on these matters. See Lee v. Baltimore Hotel Co., supra, 136 S.W. 2d, loc. cit. 698. Furthermore, defendant was entitled to this information, in determining which jurors to strike in using his peremptory challenges, regardless of whether or not it amounted to an absolute disqualification. Therefore, the judgment herein must be reversed.

■ Since this case must be retried, we will consider some of the other questions raised. Defendant contends the trial court should have either submitted to a jury the question of his sanity as a preliminary matter before his trial or submitted it, as a defense, to the jury that tried him. Before defendant was arraigned his counsel introduced in evidence before the Court a record of an order of the Probate Court of St. Louis County adjudicating defendant to be an insane person, on December 20, 1950, and a commitment to a State Hospital on the same date. Thereafter, on arraignment, defendant stood mute and the Court ordered a plea of not guilty entered. Defendant cites Ex parte McWilliams, 254 Mo. 512, 164 S.W. 221. However, that case applied to a situation where the defendant became insane after a crime was committed and before he was indicted, which is not covered by either Sec. 545.750 (where defendant becomes insane after indictment) or Sec. 546.510 (where defendant is claimed to have been insane at the time of the commission of the offense charged) and so is not applicable here. Defendant's claim, that insanity once shown is presumed to continue, citing State v. Elsea, Mo.Sup., 251 S.W.2d 650; and State v. Lowe, 93 Mo. 547, 5 S.W. 889 means that his contention is that he was insane at the time of the commission of the offense charged. However, no such claim or plea was made at the trial and no evidence of insanity was offered at the trial in 1954, not even the Probate Court record of 1950. Therefore, there was no evidence to support the submission of that issue to the

jury. As to the proper practice concerning this defense, which is an affirmative defense, see State v. Church, 199 Mo. 605, 98 S.W. 16; State v. Crane, 202 Mo. 54, 100 S.W. 422; State v. Cochran, 356 Mo. 778, 203 S.W.2d 707. Evidence of insanity may be admitted even against the will and objection of defendant if his friends or counsel set up this defense. (1 Bishop New Crim.Proc. 258, Sec. 303(2); 1 Wharton Crim.Law, 12th Ed., 108, Sec. 74; Kelly's Crim.Law and Practice, Sec. 39.) As heretofore noted, the defense herein was that defendant did not commit the crime, relying upon an alibi, that is the testimony of his mother, brother and sister that he was in the house at the time of the shooting.

Defendant also makes three contentions concerning admissibility of evidence, which we will consider.

■ First: Defendant alleges error in admitting an empty .22 caliber super X cartridge and a live .22 caliber super X cartridge found by a police officer near the doorway of the Sharp home soon after the shooting, which he says were not sufficiently identified with the crime or with defendant to have any relevancy or probative value. It is true that there was no evidence that defendant or his family owned or had possession of a .22 caliber rifle; and the bullet taken from Dr. Sharp's head was so fragmented and distorted that its caliber could not be determined. Therefore, these cartridges would not connect defendant with the crime by tending to identify any known weapon of defendant as having been used. However, they were relevant to show what kind of a weapon was used to kill Dr. Sharp; and one of defendant's objections to the main instructions in this case is that "nowhere in the proof adduced by the State was it ever established a .22 caliber rifle was fired or that a .22 caliber bullet struck and killed the decedent" as alleged in the indictment and required to be found by the instructions. Dr. Sharp's son, who saw the shot fired, stated the gun he saw was a long barreled gun and said "in my estimation it was a rifle" but he did not know whether it was a .22. Defendant cites State v. Richards, 334 Mo. 485, 67 S.W.2d 58, but overlooks the fact that, while that case held inadmissible several articles found in the home of a person other than the accused, it also said: "Empty shells were found near the place of the shooting, and a number of bullets were lodged in the walls of the buildings. These gave evidence that .38 caliber revolvers had been used." See also State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330. It was proper to show what kind of a weapon was used and this contention cannot be sustained.

■ Second: Defendant alleges error in permitting Dr. Sharp's son to give hearsay testimony in explaining why he identified defendant at the trial as the man who fired the shot when he had said at the Coroner's inquest that he was unable to identify him. Cecil Sharp said that their family lawyer, Mr. Hemker, advised him "not to rush my decision or not to jump to conclusions, but to make sure in my own mind that it was Tom Hermann that I saw and not to listen to other people and not to jump to any hasty conclusion, and since I might be in a state of shock and was very upset over the death of my father." It was certainly not improper for the Court to permit him to state what advice Mr. Hemker did give him in view of the fact that defendant's counsel brought out on cross-examination the fact that he was advised by Mr. Hemker and then went into the subject of what Mr. Hemker told him to the extent of asking: "You were advised to commit perjury and testify falsely at the coroner's inquest." See State v. Crocker, Mo.Sup., 275 S.W.2d 293, as to matters brought into a case by a party's own questions. This question certainly required the explanation made. However, in the event of the use of his inconsistent statements for impeachment, in another trial, it would be proper to allow Cecil Sharp to make such an explanation of the circumstances under which his prior statements were made. See 3 Wigmore on Evidence 737, Sec. 1044; 3 Wharton's Criminal Evidence 2301, Sec.

1408; 31 C.J.S., Evidence, § 380, p. 1167. Several cases have held that it is proper to show that inconsistency was due to advice of counsel or suggestions of others. Miller v. State, 97 Ga. 653, 25 S.E. 366; Watson v. Kentucky & Indiana Bridge & R. Co., 137 Ky. 619, 126 S.W. 146, 129 S.W. 341; State v. Sharpe, 170 La. 69, 127 So. 368; Cooper v. State, 196 Miss. 566, 18 So.2d 453; see also 20 Am.Jur. 487, Sec. 576. In the Sharpe case, 127 So. loc. cit. 369, where a witness was allowed to explain inconsistent testimony at the preliminary and at the trial by showing that a third party, one Vernon, told him what to say and made him afraid to tell the truth at the preliminary, the Court said: "It was not necessary to the admissibility of Vernon's statement to the witness that it should have been made in the presence of the accused, nor was the statement objectionable as hearsay evidence. It was, in fact, primary evidence of what brought about the conflict between the evidence of the witness, given on the two occasions." However, as held in State v. Main, 37 Idaho 449, 216 P. 731, in making an explanation, a witness should not be permitted to testify to hearsay evidence of what a defendant did.

 Third: Defendant alleges error in permitting Dr. Sharp's wife and son to testify to certain conduct of defendant some time before the shooting. Defendant does not question the propriety of the testimony of Mrs. Sharp and her son concerning a threat made by defendant to shoot her and her daughter and a neighbor girl who was with them. However, he claims error in permitting them to testify to matters which he says did not constitute a threat; and he cites cases holding inadmissible altercations between a defendant and a third person, such as State v. Palmer, 281 Mo. 525, 220 S.W. 680, and State v. Maddox, 339 Mo. 840, 98 S.W.2d 535. One of these two incidents, of which complaint is made, was that defendant came running toward Cecil, when he cut across the Hermann property coming home from school, swearing at him and saying he would get him. The other was concerning defendant cutting a tree on the Sharp property, refusing to stop and saying the property did not belong to the Sharps. From what appears in the record, this latter incident may not have constituted a threat but the former seems to have been of that nature. This is a matter for the trial court to determine from the circumstances shown in evidence. (The record is not clear but Dr. Sharp may have been present during the latter incident. Threats to the Sharp family would be competent to show malice, ill will, motive and intent, under the facts of this case. 20 Am.Jur., 281, Sec. 303, p. 322, Sec. 347; 26 Am.Jur. 373, Sec. 323, p. 403, Sec. 358, p. 479, Sec. 466; 1 Wharton's Criminal Evidence 363, Sec. 282. As we said in State v. Brown, 360 Mo. 104, 227 S.W.2d 646, 652, "A wide latitude is generally allowed in the development of evidence of motive."

Defendant also makes several contentions of error concerning giving and refusal of instructions. These contentions may be considered in preparing instructions when the case is tried again.

The judgment is reversed and the cause remanded.

All concur.

### On Motion for Rehearing or to Transfer to Court en Banc

The State says our decision is contrary to State v. Wilson, 230 Mo. 647, 132 S.W. 238, 239. However, in that case the juror was not asked whether he had been accused or involved in a criminal case as juror Michel herein specifically was asked three times, but only was asked a general question "if he knew of any reason why he could not sit as a juryman in the case and give defendant a fair and impartial trial." Thus, the Wilson case is not in point and in no way involves the situation presented here.

 The State further says that the trial court had discretion as to whether it would or would not sustain the motion for

new trial on the grounds that a juror who sat in the trial was disqualified when this disqualification was first raised in the motion for new trial; and that, since the trial court overruled the motion, this action should be sustained unless error is manifest and there is a clear abuse of discretion. The State cites such cases as State v. Dusenberry, 112 Mo. 277, 20 S.W. 461 (where overruling motion for new trial on consideration of affidavits and counter affidavits as to prejudice of jurors was held not to be an abuse of discretion); State v. Lewis, 323 Mo. 1070, 20 S.W.2d 529 (where the court also acted on an affidavit and counter affidavit); Consolidated School Dist. No. 3, Grain Valley v. West Missouri Power Co., 329 Mo. 690, 46 S.W.2d 174 (where action on juror's misconduct during the trial was held to be within the discretion of the trial court); O'Brien v. Vandalia Bus Lines, 351 Mo. 500, 173 S.W. 2d 76 (where the voir dire examination was incomplete); and other cases in which the question was whether the trial court erred in qualifying jurors such as Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548; Ruschenberg v. Southern Elec. R. Co., 161 Mo. 70, 87, 61 S.W. 626, 630. Of course, the trial court has discretion, in such doubtful cases, to determine the matter of a juror's qualifications.

■ However, in Massman v. Kansas City Public Service Co., Mo.Sup., 119 S.W.2d 833, 838, also cited by the State, in upholding the trial court's action in overruling the motion for new trial, we said the facts "were not sufficient to *conclusively* show that Bockhouse was disqualified to serve as a juror in this case or that he was guilty of giving false answers about his qualifications herein; so that at most the matter of granting a new trial on such grounds was within the sound discretion of the trial court which had ample opportunity to be familiar with the incidents of the trial and the attitude of this juror." (Our italics). In this case, it does conclusively appear that juror Michel was disqualified and that he deliberately concealed his disqualification so that there was no discretion to be used in determining whether or not he was disqualified. In such cases we often have held that a new trial should be granted. See State v. Connor, Mo.Sup., 274 S.W. 28, 30; State v. Sherrill, Mo.Sup., 278 S.W. 992, 994; State v. Hutchinson, Mo.App., 289 S.W. 969, 970; State v. Taylor, 64 Mo. 358; State v. Wyatt, 50 Mo. 309; State v. Burnside, 37 Mo. 343. Another similar situation is presented in cases where the jury panel has not been selected as required by law. The rule is "that a challenge to the array, based on irregularity in the selection of the jury panel, must be made in writing prior to trial and verdict." State v. Thursby, Mo., 245 S.W. 2d 859, 865. Nevertheless, as therein held, when defendant and his counsel did not learn of the illegality until after the trial was completed and the circumstances were not such as to show lack of diligence on their part, the judgment of conviction will be reversed. See also State v. Emrich, 361 Mo. 922, 237 S.W.2d 169; State v. McGoldrick, 361 Mo. 737, 236 S.W.2d 306; State v. Rouner, 333 Mo. 1236, 64 S.W.2d 916, 92 A.L.R. 1099. In a case such as this where a juror deliberately conceals such an important conclusive matter of disqualification as a felony conviction and one which would be so vital to a party to the case, we think it is clear that a new trial must be granted.

The motion for rehearing or to transfer to the Court en Banc is overruled.

All concur.