STATE of Missouri, Respondent,

v.

Billy Joe TAYLOR, Appellant.

No. 51929.

Supreme Court of Missouri,
Division No. 2.

April 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Ben J. Martin, Sp. Asst. Atty. Gen., Springfield, for respondent.

James E. Baldwin, Lebanon, for appellant.

BARRETT, Commissioner.

For twelve years Ruby O'Flynn and her father Elmer Flynn, age 85, have lived on

a small tract of land just outside Richland. In addition to their residence and in nearby separate buildings, "all compact there together," they operated a 3.2 beer tavern and a small package liquor store. On July 26, 1965, about 12:30 o'clock the appellant, Billy Joe Taylor, age 30, drove up in a 1965 red Valiant automobile that he had rented in Memphis, Tennessee, on July 24, and parked in front of the tavern. He drank a beer or two, ate a couple of sandwiches and visited with Ruby for about two hours. Among other topics of conversation Billy Joe told Ruby that he had once lived in Richland. After the hour or so Billy Joe apparently left and Ruby went to the house to take some previously forgotten medicine and when she returned to the tavern Billy Joe had parked the Valiant "around the back of the place" and again came in the front door. Ruby told him she was going to close up and he asked for one more beer and another sandwich and went to the rest room. When he came out he "came back behind me and put a gun on me," a black gun with white "handle" and he said, "I'm going to blow your brains out; don't give me any trouble or I'll blow your brains out." He took the money from the cash drawer, $86 in cash, $294.50 in checks, and from the counter Ruby's green billfold which contained $155.00 in bills and two or three dollars in change. He took a sash from Ruby's dress and tied her arms he took his own belt off and tied her feet and tied a towel across her mouth, dragged her behind the bar and left her on the floor. Her father sitting in his chair in front of the liquor store was not aware of these events until Ruby got her feet loose and came out to have him untie her hands. Sheriff's officers and highway patrolmen were alerted and after a hundred mile an hour chase through the streets of Lebanon Billy Joe wrecked the Valiant, was taken into custody and finally charged with robbery in the first degree. A jury found him guilty and since, as charged, he admitted two prior robbery convictions in other jurisdictions the court fixed his punishment at twenty-five years' imprisonment

and he has appealed, and in both the trial court and here has been represented by respected lawyers from the Laclede County bar.

Richland is on the Laclede-Pulaski County line and the appellant's first assignment of error is that the state "failed to prove venue" and therefore, it is said that "the conviction cannot stand." State v. Hawkins, Mo., 361 S.W.2d 775; State v. Poelker, Mo., 378 S.W.2d 491. And, of course, "Offenses committed against the laws of this state shall be punished in the county in which the offense is committed * * *." RSMo 1959, § 541.030, V.A.M.S. There is no need to elaborate on the subject here, however, the difficulty with the appellant's assignment is that it is circumstantially if not directly disproved by the record. State v. Hartwell, Mo., 293 S.W. 2d 313; State v. Palmer, 281 Mo. 525, 220 S.W. 680. Without detailing other relevant circumstances Ruby testified that she and her father lived in Laclede County. She said that their property was "right on the county line" but she knew "where the line runs" and on redirect examination said that the tavern, store and house, while three separate buildings were "all on the same tract of land. Q. Were all three of these in Laclede County? A. Yes. Q. In fact, is all your land in Laclede County? A. Yes, sir. Q. There is only one area more or less, just a small point and they are all there all in Laclede County? A. Yes." The holdup and robbery, according to Ruby, occurred inside the tavern. In these circumstances the state sufficiently established and the jury could reasonably find venue in Laclede County. State v. Heissler, Mo., 324 S.W.2d 714.

The appellant's second assignment is that the court prejudicially erred in overruling his application for a continuance (Cr. Rule 25.08, V.A.M.R.; RSMo 1959, § 545.710, V.A.M.S.) thus requiring him to go to trial "at a time when the community was inflamed, aroused and prejudiced

against defendant as a result of a newspaper publication and radio broadcast two days prior to the commencement of trial." The circumstances are quite dissimilar, a district collector of Internal Revenue charged with several counts of accepting money and just before trial being subjected to an extensive, widely publicized congressional investigation, but appellant relies upon the principles underlying Delaney v. United States, 1 Cir., 199 F.2d 107. But again the record does not support the assignment. As stated, the robbery occurred on July 26, 1965 and the case was tried beginning on Wednesday, October 6, 1965. As to the specific assignment all that appears is that on October 5, 1965, a motion for a continuance was filed; the motion alleged that the Lebanon Daily Record of October 4, 1965, and radio station KLWT published news releases that Billy Joe had escaped from the Laclede County jail and had attempted to escape from the Greene County jail. It was alleged that these releases were prejudicial and made "it impossible to set a fair and impartial jury." Attached to the motion was part of a page from the newspaper. The first paragraph of the article stated that Judge Curtis had that day, October 4, sentenced Carl Abe Brown to two years upon his plea of guilty to a check charge. After relating some of the circumstances concerning the check, this was the rest of the news item:

"Judge Curtis also today set trial of Billie Joe Taylor, on an armed Robbery charge, for Wednesday. Taylor, after being jailed here, escaped and then was recaptured.

"He reportedly tried to escape from the Greene County jail in Springfield during the past weekend."

There was no transcript of the radio broadcast.

In the first place, there was no request for a hearing upon this request for a continuance and there was no proof whatever of the allegations of the motion. All that appears is that "said motion * * coming on for hearing and determination, was by the court on October 5, 1965, overruled, over the objections of the defendant." It may not be said on the mere face of the presented material that it was so manifestly inflammatory as to certainly prevent the appellant from having a fair trial. Since it was not that type of material, the mere formal application is not in and of itself self-proving and from the minute entry the court evidently considered the material on file before it and, of course, what the court itself must have known and it may not be said that there was an abuse of discretion in the denial of the motion upon the showing or presentation made. State v. Le Beau, Mo., 306 S.W.2d 482, 486; State v. Sanders, Mo., 313 S.W.2d 658, 660.

Without further requests or objections, the defendant announcing ready for trial, the cause proceeded. Prior convictions were admitted, the jury was returned to the courtroom, the panel of thirty jurors was sworn and the court said (only parts of the voir dire examination are set out); "No doubt you have read something in the newspapers about this case, and you may have seen something on the television about it, may have heard something on the radio about it. Let's see how many have read or heard it on the radio or seen it on the TV. Well, a great many of you, most of you. Of those who have read something about the case, heard it on the radio or seen it on TV, has any one of you formed or expressed an opinion about the guilt or innocence of the accused? Don't tell us what your opinion is if you have one." One juror after being examined and indicating that it would take evidence to remove his feeling of guilt was excused. Then a lady juror was excused because of her opinion, a third juror was excused because he had talked to Sheriff Murphy about the case. The court then requested the sheriff to secure four more jurors, other jurors were temporarily excluded, the four were

examined, there was a recess, defense counsel consented "for the separation of the jury" and the case proceeded to trial without other or further objection or request for court action.

There was no mention in qualifying the jury of Billy Joe's escape or attempt to escape, the qualifying procedure was the apparently conventional attempt to select a fair and impartial jury. Of course the circumstances in which the appellant committed the offense were not likely to arouse a great deal of sympathy but there is no way to erase the prejudice engendered by the defendant's commission of the offense and upon this record there was no manifest abuse of discretion comparable to that in Delaney v. United States and upon this particular record the court did not prejudicially err. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 112–113; State v. Spica, Mo., 389 S.W.2d 35.

The three other assignments of error have to do with the handling and admission in evidence of certain exhibits. These assignments are argued in some detail but need only brief notice here. There was Ruby's sash, Billy Joe's belt and sunglasses, a photograph of the wrecked Valiant, Ruby's green billfold and among other claims it was said that some of the articles were handled by witnesses and seen by the jurors before being properly admitted in evidence. As to some of the items, as the colored sash, it is said that "the chain of custody" was not properly established and that the photograph of the wrecked automobile and the vehicle with which it collided was not relevant or material to the charge of armed robbery and tended to unfairly inflame the jury. Without unnecessarily detailing all the circumstances in which these articles were handled and finally offered in evidence, it is sufficient to say that as to several of the matters there were no objections, or the objections were lacking in specificity and present no reviewable questions here. State v. Brooks, Mo., 360 S.W.2d 622. It is not claimed that by reason of their gruesomeness the photographs were inflammatory, they fairly represented the termination of Billy Joe's course after the robbery and while the oral testimony fully and completely described all the events of the robbery the photographs were at most cumulative and there was no abuse of discretion in their admission in evidence. State v. Sims, Mo., 395 S.W.2d 445, 449. The belt, sash, sunglasses and other items were carefully identified either by Ruby, sheriff's officers or patrolmen, they were all initialed or marked, their care and custody accounted for and they were all employed in the robbery or worn by Billy Joe and aided in the positive identification of him as the robber and, needless to say, in any event were admissible in evidence, certainly as against the assignments made here. State v. Bland, Mo., 353 S.W.2d 584, 586; State v. Knox, Mo., 320 S.W.2d 592; State v. Easley, Mo., 338 S.W.2d 884; State v. Gerberding, Mo., 272 S.W.2d 230.

In these circumstances, the grounds set forth in the assignments of error not entitling the appellant to a new trial, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.