**STATE of Missouri, Respondent,**

v.

**Roy E. HAWKINS, Appellant.**

**No. 49156.**

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1962.

Whitsitt & Ehrlich, John R. Whitsitt, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

By an information filed in the Circuit Court of Henry County, defendant was charged with altering a check with intent to defraud by increasing the numerals "$500.00", therein handwritten in ink as the amount payable, to "$5,000.00", contrary to the provisions of § 561.011 RSMo 1959, V.A.M.S. (to which revision all statutory references herein are made). On application of defendant for change of venue, the case was transferred to the Circuit Court of Bates County, where, upon trial, the jury returned a verdict finding him guilty as charged and assessing his punishment at imprisonment in the state penitentiary for a term of two years. His motion for new trial was overruled and he was thereupon sentenced to custody of the Department of Corrections for the term designated by the verdict. He has appealed.

Defendant's brief contains five points. Four of them are predicated upon his contention that the alteration here shown did not constitute a crime. That contention, in substance, runs thus: inasmuch as the only alteration alleged and shown in the evidence was the alteration of the handwritten *numerals* purporting to set forth the face amount of the check to conform with the purported amount payable, as *stamped in the body of the check by the drawer thereof with a check protector,* to wit: "Exactly $5000 & 00 Cts.", such alteration was immaterial. The remaining assignment is that, assuming the information alleged and the evidence supported a finding of defendant's guilt, yet there was no evidence that the offense was committed in *Henry County, Missouri.* That contention was specifically set forth in defendant's motion for an acquittal filed at the close of the evidence and thereafter duly carried forward in his motion for new trial.

Defendant offered no evidence. That adduced in behalf of the State, to the extent here material, supports a finding of the following facts: On the 12th day of May, 1960, defendant and Irving Lee Bush, Sr., met in the offices of S. & J. Sales Co., Inc., in Kansas City, Missouri, to consummate an exchange of real estate. Mr. Bush was a resident of the city of Clinton, Henry County, Missouri. The transaction consisted of the trading of property owned by defendant in Colorado for certain properties owned by Mr. Bush in Kansas and Texas. Also present on that occasion were Waldon E. Jones and Mrs. Loretto Smith, respectively, the president and secretary of said sales company. As a result of that transaction, it was agreed that Mr. Bush owed defendant a balance of $481.40, which he would pay by check. Defendant suggested that there was an air conditioner in his property in Colorado and that if Mr. Bush would make the check for $500.00, he could have the air conditioner. Mr. Bush agreed and instructed Mr. Jones, who was representing and receiving a commission from Bush, to make out a check for that amount, and he, Bush, would repay him, Jones, when the deeds were executed and the amount of commission owed by Bush to S. & J. Sales Company was determined. Mr. Bush then went to his home in Clinton. Later that afternoon, defendant insisted that he and Jones go to Clinton and close the deal with Bush that evening. It was then late in the day and Jones did not want to go, but de-

fendant was "rushing and pushing", saying that he had to go to Oklahoma at 4:00 o'clock the next morning, so Jones finally agreed to go. At the direction of Jones, Mrs. Smith thereupon prepared the check here in question. In so doing, she used a form of check printed for the use of the S. & J. Sales Company in issuing checks drawn on its account in the Southeast State Bank of Kansas City, Missouri. She wrote thereon in ink the date of "5/12/60", the name "Irving Lee Bush, Sr.", as payee therein, and, following that, she wrote in ink in the space provided therefor the numerals "500.00", so that the face of the check as written by Mrs. Smith read "$500.-00". She then placed the check in a check protector and (inadvertently) caused to be stamped in the blank line provided for writing out in full the face amount of the check "Exactly $5000 & 00 Cts." Immediately beneath the amount stamped upon the check by means of the check protector she wrote in ink in a space for listing the item or items for which the check was given the words "Loan to complete Colorado transaction $481.40"; and, finally, beneath the name of S. & J. Sales Co., Inc., printed on the check as the drawer, she wrote her name, "Loretto M. Smith". When she had thus completed the check, she handed it to Mr. Jones. He noticed only that the face amount written in ink thereon was $500.00 and that the check was payable to Mr. Bush. He placed the check in his pocket for delivery to defendant upon exchange of the documents required to complete the transaction. Mr. Jones at that time also called Mr. Bush and suggested that he obtain the services of a notary so that he and defendant could come to Clinton that evening and finally close the transaction. In compliance with that suggestion, Bush arranged with a Mr. Potter, a notary public, to take the necessary acknowledgments at his, Potter's, office in the basement of the courthouse in Clinton that evening. Defendant and Jones arrived at Bush's office after 6:00 p. m. Following some discussion and examination and signing of certain docu-

ments, Jones delivered the check to Bush, who looked at it and saw that it was made to him and bore the ink-written numerals "$500.00" as the purported amount payable. He then and there endorsed his name on the back thereof and handed it to defendant. Insofar as the evidence shows that was the first time defendant had seen the check. Jones, Bush and defendant then rode together in the same car to Potter's office. They were there approximately thirty minutes. During that time defendant left Potter's office to get some "cokes" from a vending machine on the second floor of the courthouse. After an interval of "several minutes", "more than five minutes", "ten or more minutes", he returned with the "cokes". He was in a hurry to get finished up; he seemed nervous and excited. At 10:00 o'clock the next morning, May 13, 1960, Mrs. Smith talked over the phone with defendant at his home in Grandview, Jackson County, Missouri, and he promised to come by the office to pick up the abstracts and a "closing statement" prepared for him. He did not come and never has. About 4:00 o'clock that afternoon, Mr. Bush went to the home in Grandview where defendant and his wife had been living. They were not there and Mr. Bush received information that they "had moved out that morning."

At the trial, Mrs. Smith produced an exact carbon copy of the check which was made at the time she prepared it in the manner hereinabove detailed. It was on a printed form for use as a carbon copy and was affixed in the checkbook under the original check form, with carbon paper placed between the original and the form for carbon copies of checks used out of that book. It shows beyond question, and the brief filed in behalf of defendant concedes, that when the check was received by defendant the handwritten numerals appearing thereon were "$500.00". A duly qualified expert testified in detail as to the manner in which the numerals had been altered to show $5,000.00 instead of $500.00. At a "hearing" held either in Jackson or Henry County defendant admitted he had cashed the check

as a $5,000.00 check in Fort Smith, Arkansas, in the purchase of a Buick automobile. When the check was paid by the Southeast Bank of Kansas City on May 19, 1960, it bore the following endorsements: (1) "Irving Lee Bush, Sr."; (2) "Roy E. Hawkins"; (3) "For deposit only, Brackeen Bros. Buick"; and (4) an illegible stamped endorsement of a bank in which it had been deposited. The alteration was discovered when Mrs. Smith examined the statement of account and cancelled checks of S. & J. Sales Company, Inc., received through the mail from the Southeast State Bank.

■ Of course, if the evidence does not support a finding that venue of the charge filed against defendant and of which he was convicted was properly laid in Henry County, Missouri, the judgment herein rendered cannot stand. We, therefore, direct our attention first to that question.

■ Section 541.030 provides: "Offenses committed against the laws of this state shall be punished in the county in which the offense is committed, except as may be otherwise provided by law." Although there are special statutory provisions as to jurisdiction and venue of other offenses in the State of Missouri, there is none with respect to forgery. In the absence of such a statute, the venue of a prosecution for forgery is in the county where the forgery was actually committed and the offense of uttering a forged instrument must be tried in the county in which it was uttered. 22 C.J.S. Criminal Law § 185(15), page 476.

■ Due to the difficulty of proving the place of a forgery, the courts of this state have, in some instances, indulged in prima facie presumptions in order that a case may be made in the absence of evidence contradictory to the prima facie presumption so indulged. In these cases, it has been stated that possession of a forged instrument, or, at all events, the uttering of it in the county where the indictment or information is found is cogent evidence to be addressed to the jury that the forgery was committed by the defendant in that county. State v. Yerger, 86 Mo. 33, 39; State v. Willard, 228 Mo. 328, 128 S.W. 749, 751–752; State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1022.

These cases, however, are of no aid in determining venue in this case. The evidence shows that it was *uttered* by defendant in Arkansas and there is not a scintilla of evidence to establish that the check was *altered* while in the possession of defendant in Missouri. The only evidence even hinting at an effort to show that the check was *altered* by defendant in Henry County was to the effect that he left the presence of the State's witnesses for several minutes on the mission to get "cokes" and when he returned he seemed nervous, excited and in a hurry. (The evidence also shows that even before the check was executed he was "rushing and pushing", saying that he had to go to Oklahoma.) It may also be noted that after leaving Potter's office in Henry County defendant was in Jackson County, Missouri, as late as 10:00 o'clock the following morning. These facts present at most evidence that defendant had an opportunity to alter the check in Missouri; on the other hand, he also had an equal opportunity to alter it after he left Missouri. Consequently, any conclusion reached by the jury that the check was altered in Missouri could only rest upon pure speculation.

In this state of the record, the Attorney General, in the brief filed in behalf of the State, admits with commendable candor that although the guilt of defendant may be deemed evident, yet no rule of evidence has been found to support the proposition that a mere opportunity afforded him to alter the check in Missouri, especially when it was not uttered until he reached Fort Smith, Arkansas, would support a finding that the alteration occurred in Missouri. We are forced to the same conclusion and must hold that there is no evidence that defendant committed the crime here charged in the State of Missouri.

We find no indication in the record that there is any likelihood whatever that, upon remand and retrial, the State would be able to adduce evidence sufficient to support a finding that the check was altered in Henry County, or even in Missouri. Consequently, we are persuaded that no good purpose would be served by remanding the case for a new trial.

The judgment is reversed.

All concur.